Barbara Wrubel
Mark S. Cheffo
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
Attorneys for Defendant Pfizer Inc

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SOUTHERN ILLINOIS LABORERS' AND
EMPLOYERS HEALTH AND WELFARE
FUND; NECA-IBEW WELFARE TRUST
FUND; MIDWESTERN TEAMSTERS
HEALTH AND WELFARE FUND; THE
WELFARE FUND OF TEAMSTERS LOCAL
UNION 863; PLUMBERS & PIPEFITTERS
LOCAL UNION 630 WELFARE TRUST
FUND; CLEVELAND BAKERS AND
TEAMSTERS HEALTH AND WELFARE
FUND; ELECTRICAL WORKERS BENEFIT
TRUST FUND; FIRE & POLICE RETIREE
HEALTH CARE FUND, SAN ANTONIO,
LABORERS' DISTRICT COUNCIL
BUILDING AND CONSTRUCTION
HEALTH AND WELFARE FUND;
LABORERS' DISTRICT COUNCIL HEAVY
AND HIGHWAY UTILITY HEALTH AND
WELFARE FUND, and NEW YORK CITY
POLICE SERGEANTS BENEVOLENT
ASSOCIATION HEALTH & WELFARE
FUNDS, individually, and on behalf of all
others similarly situated,

   Plaintiffs,

  v.

PFIZER INC.,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 08cv5175 (DAB)
**ECF Case**

Electronically Filed

**DEFENDANT PFIZER INC'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR RECONSIDERATION OF THE MINUTE ORDER OF MAY 22, 2008**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 5

A.      The November 14th Order ............................................................................. 5

B.      The December 21st Order .............................................................................. 8

ARGUMENT ............................................................................................................ 11

I.      RELEVANT STANDARDS ......................................................................... 11

II.     JUDGE DARRAH OVERLOOKED CRITICAL FACTS AND
        CONTROLLING AUTHORITY IN SETTING ASIDE THE
        NOVEMBER 14TH ORDER ....................................................................... 12

        A.      Judge Darrah Failed to Consider Plaintiffs' Own Allegations and
                Controlling Case Law in Finding That Specific Prescription
                Information Is of "Relatively Small Evidentiary Value" ................ 13

        B.      Judge Darrah Failed to Consider Key Facts and Controlling Law in
                Setting Aside Judge Brown's Finding That the Discovery Does
                Not Pose an Undue Burden ............................................................. 19

III.    JUDGE DARRAH OVERLOOKED CRITICAL FACTS AND
        CONTROLLING AUTHORITY IN SETTING ASIDE THE DECEMBER
        21ST ORDER ............................................................................................... 23

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

Cases                                                                                          Page

*In re ATM Fee Antitrust Litigation*, No. C 04-02676 CRB,
    2007 U.S. Dist. LEXIS 47943 (N.D. Cal. June 25, 2007) .................................................15

*D'Antonio v. Metropolitan Transportation Authority*, No. 06 cv 4283,
    2008 WL 582354 (S.D.N.Y. Mar. 4, 2008) ........................................................................14

*DiLaura v. Power Authority*, 982 F.2d 73 (2d Cir. 1992) .............................................................12

*Doe v. Blum*, 729 F.2d 186 (2d Cir. 1984)......................................................................................17

*Fielding v. Tollaksen*, 510 F.3d 175 (2d Cir. 2007).......................................................................12

*FTC v. Pacific First Benefit, LLC*, 361 F. Supp. 2d 751 (N.D. Ill. 2005) .....................................12

*Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004) ...........................................................19

*Highland Capital Management, L.P. v. Schneider*, No. 02 Civ. 8098,
    2008 WL 282769 (S.D.N.Y. Jan. 31, 2008) ......................................................................12

*International Union of Operating Engineers Local  No. 68 Welfare Fund v. Merck
    & Co.*, 929 A.2d 1076 (N.J. 2007).....................................................................................19

*Jackson v. City of Chicago*, No. 03 C 8289, 2006 WL 2224052
    (N.D. Ill. July 31, 2006)......................................................................................................12

*Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, No. 02 Civ. 0795,
    2005 WL 551092 (S.D.N.Y. Mar. 9, 2005) .......................................................................12

*MCI Worldcom Network Services, Inc. v. Pelcrete Construction, Inc.*, No.
    04Civ7378, 2006 WL 559664 (S.D.N.Y. Mar. 6, 2006) ...................................................11

*McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) ......................................3, 17,
                                                     18, 19

*Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004)............................3, 21

*Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*,
    No. 02 C 2523, 2004 WL 609326 (N.D. Ill. Mar. 23, 2004) .............................................12

*Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985).............................................................16

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) ....................................................19

*In re Rezulin Products Liability Litigation*, 524 F. Supp. 2d 436 (S.D.N.Y. 2007) ......................19

*Rubin v. Islamic Republic of Iran*, No. 03 CV 9370, 2007 WL 2219105
    (N.D. Ill. July 26, 2007) ........................................................................................12

*Smith v. NBC Universal*, 524 F. Supp. 2d 315 (S.D.N.Y. 2007) ....................................17

*Smith v. Sprint Communications Co.*, No. 99 C 3844, 2003 WL 715748
    (N.D. Ill. Feb. 27, 2003)........................................................................................12

*In re St. Jude Medical, Inc.*, 522 F.3d 836 (8th Cir. 2008) ..........................................16

*United States Fidelity & Guaranty Co. v. Frosty Bites, Inc.*, 350 F. Supp. 2d 508
    (S.D.N.Y. 2004) ......................................................................................................11

*Vista HealthPlan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893
    (C.D. Cal. Nov. 13, 2007) ......................................................................................16

## Statutes and Rules

Fed. R. Civ. P. 26(b)(2)(C)(iii) ...................................................................................4, 21

Fed. R. Civ. P. 72(a) ...................................................................................................4, 12

Defendant Pfizer Inc ("Pfizer") respectfully submits this memorandum in support of its motion, pursuant to Local Civil Rule 6.3 and Federal Rule of Civil Procedure 54(b), for reconsideration of the Minute Order of May 22, 2008, in which the transferor Court, without any hearing or oral argument, vacated and set aside, *in toto*, the November 14 and December 21, 2007, Opinions and Orders of Magistrate Judge Geraldine Soat Brown.[1]

## PRELIMINARY STATEMENT

This case, which has been pending for over two years, was brought by eleven unrelated health insurance entities from eight states ("Plaintiffs" or the "Funds"), who claim that Pfizer improperly marketed its cholesterol-lowering medicine, Lipitor, for "off-label" use, and that, as a result, they "paid improperly inflated prices for Lipitor and for an increased number of Lipitor prescriptions." Second Am. Compl. [D.E. 127][2] (under seal) (hereinafter, "SAC") at ¶ 5; *see also id.* ¶¶ 8-18. Plaintiffs assert federal RICO and various state law causes of action, claim "billions of dollars" in damages, and seek to represent a nationwide class of third-party payors.[3] *See id.* ¶¶ 1, 110. Pfizer categorically denies Plaintiffs' claims that it improperly or unlawfully labeled or promoted Lipitor. Although Pfizer moved to dismiss Plaintiffs' original and Amended Complaints, the transferor court never decided either motion.[4] The court denied Pfizer's motion

---

[1] Just after vacating the Orders, on May 29, 2008, Judge John W. Darrah of the Northern District of Illinois issued an order, pursuant to 28 U.S.C. § 1404, transferring this action to this Court. The Court had previously indicated that it would enter a transfer order after ruling on Plaintiffs' objections to Magistrate Judge Brown's Orders.

[2] "D.E. ___" refers to the docket entry number on the docket of the transferor court, the Northern District of Illinois.

[3] Plaintiffs have never filed a motion for class certification.

[4] In each case, after Pfizer's motion to dismiss had been fully briefed and pending for months, the transferor court permitted Plaintiffs to amend their pleading. After Pfizer filed a motion to dismiss the SAC, the operative pleading, the parties agreed to stay further briefing pending

*(cont'd)*

to stay discovery pending resolution of its successive motions to dismiss, and discovery proceeded actively for over fifteen months.[5] After numerous hearings and the submission of hundreds of pages of briefing and exhibits over the course of over eight months, Magistrate Judge Brown (to whom Judge Darrah had referred discovery matters), issued two detailed, well-cited, and carefully considered Opinions and Orders on discovery issues that go to the core of the claims and defenses in this action. Notwithstanding the Herculean efforts of the Magistrate Judge, Judge Darrah, in a Minute Order entered on May 22, 2008 (the "May 22nd Order"), set aside both of Judge Brown's Orders – even sections to which Plaintiffs never objected. *See* May 22nd Order [D.E. 213] (Ex. A).[6]

Specifically, on Plaintiffs' objections under Federal Rule 72(a), Judge Darrah set aside: (1) Judge Brown's Order of November 14, 2007 [D.E. 166] (the "November 14th Order") (Ex. B), directing Plaintiffs to respond to an interrogatory first served more than sixteen months earlier, asking them to identify the allegedly improper off-label Lipitor prescriptions they claim they have paid for; and (2) Judge Brown's Order of December 21, 2007 [D.E. 185] (the "December 21st Order") (Ex. C), directing Plaintiffs to produce a number of categories of

---

*(cont'd from previous page)*

transfer to this Court. Pursuant to the parties' agreement, Pfizer intends to promptly file an amended motion to dismiss that complies with this Court's and the Local Rules.

[5]    In February 2008, the parties stipulated to a stay of further discovery, pending the resolution of Pfizer's motion to dismiss [D.E. 211].

[6]    To avoid any confusion arising from the transfer of the docket, and for the Court's convenience, the record documents cited herein that are not filed under seal are attached as exhibits to the accompanying Declaration of Mark S. Cheffo, and designated as "(Ex. ___)."

documents, unredacted prescription records, and information about how they obtained certain confidential and proprietary documents, in response to long-outstanding discovery requests.[7]

Pfizer respectfully submits that in summarily vacating the Magistrate Judge's decisions to effectuate transfer, the District Court overlooked both significant facts and controlling law, and has materially impeded Pfizer from developing its defense.  In particular, Judge Darrah overlooked, or misapprehended:

- Plaintiffs' allegations in their Second Amended Complaint, which confirm that the individual, prescription-specific discovery Judge Brown ordered is highly relevant to Plaintiffs' claims and Pfizer's defenses, regardless of Plaintiffs' claimed intent to attempt to prove their claims through unspecified aggregate data or a statistical "model";

- The Second Circuit's decision in *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), which establishes that "individualized proof," *id.* at 223 – not mere "nationwide data," like that on which Plaintiffs purport to rely (May 22nd Order at 2) – is required in RICO actions, like this one, alleging that marketing misrepresentations led plaintiffs "to buy [a product] in greater quantity than they otherwise would have and at an artificially high price," *McLaughlin*, 522 F.3d at 220; *see also* 4/8/08 Letter to Judge Darrah (Ex. D);[8]

- *McLaughlin* and other well-reasoned decisions that demonstrate that Plaintiffs' "price inflation" theory of injury is defective as a matter of law and, therefore, cannot define the scope of discovery (much less preclude Pfizer's discovery);

- Plaintiffs' ability to obtain and disclose relevant non-party medical information pursuant to their contractual rights with their participants, the parties' Health Insurance Portability and Accountability Act ("HIPAA") compliant protective order, an agreed letter to physicians, and *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004);

---

[7]   Although Plaintiffs did not object to Judge Brown's Order directing them to respond to Pfizer's interrogatory about Plaintiffs' pre-litigation acquisition of Pfizer's confidential and proprietary documents, *see* May 22nd Order at 1, Judge Darrah voided it.  His May 22nd Order sets aside Judge Brown's Order in its entirety, and provides that "Plaintiffs are not required to comply with that order." *Id.* at 2.  At a minimum, the May 22nd Order should be modified to excise from Judge Brown's Orders only those discovery obligations to which Plaintiffs actually objected and the District Court overruled.

[8]   The District Court did not even acknowledge the *McLaughlin* decision.

3

- Plaintiffs' discovery responses and other statements in the record agreeing to produce documents in response to many of the discovery requests encompassed by the December 21st Order;

- The factors set forth in Rule 26 for determining whether "the burden . . . of the proposed discovery outweighs its likely benefit," including: "the amount in controversy," "the importance of the issues at stake," and "the importance of the discovery in resolving the issues," Fed. R. Civ. P. 26(b)(2)(C)(iii); and

- The lack of evidence of any burden other than the obligations of Plaintiffs' counsel to collect and review certain documents – hardly an unfamiliar, unexpected, or unfair task in litigation seeking billions of dollars, and in which Pfizer has already produced hundreds of thousands of pages to Plaintiffs.

As a result of his failure to consider these facts and authorities, Judge Darrah has dictated a one-sided, and lopsided, course of discovery that is limited solely to the sources on which *Plaintiffs* purportedly intend to rely to prove their claims – none of which involve the Funds' actual data or experiences – and to Plaintiffs' price-inflation theory of injury, which is defective as a matter of law. The Order categorically, and radically, precludes Pfizer from obtaining discoverable information that goes to the heart of Plaintiffs' allegations of causation and injury, and the viability of their claims for a nationwide class and billions of dollars. Such a result does not withstand scrutiny under the Federal Rules, prevailing case law, or constitutional due process, and must be reconsidered to prevent manifest injustice. As set forth below, each of the matters and authorities that Judge Darrah overlooked support Judge Brown's rulings and warrant a finding that they are *not* "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a). Both of Judge Brown's Orders should be reinstated in their entirety.

# BACKGROUND[9]

## A.    The November 14th Order

In each of their three successive complaints in this action, Plaintiffs have alleged that

Pfizer promoted Lipitor for cholesterol treatment in "moderate risk" patients, and that this

purported "off-label" marketing caused *the Funds*, and a putative class, to pay for "unnecessary,"

prescriptions.[10] *See, e.g.*, Compl. [D.E. 1] (Ex. E) at ¶¶ 2-3, 5-7, 49, 51; Am. Compl. [D.E. 45]

(Ex. F) at ¶¶ 2-3, 5-16, 64, 65; SAC ¶¶ 3-5, 8-18, 80, 108-77, 220, 232, 241, 246.  Accordingly,

since discovery began in June 2006, Pfizer has requested that the Funds identify the allegedly

improper off-label Lipitor prescriptions, for which they claim to have paid, that were prescribed

as a result of Pfizer's alleged conduct.  *See* Pfizer's Mem. in Support of Motion to Compel [D.E.

78] (Ex. G) at 11-12.  However, over ten months after Pfizer first requested the information in

June 2006, and after entry of a comprehensive, HIPAA-compliant protective order, the Funds

had not identified a single allegedly improper off-label prescription and refused to provide the

information.  Pfizer moved to compel [D.E. 78], and the motion was assigned to Judge Brown.

Following a hearing on June 13, 2007, Judge Brown ordered Plaintiffs to start with one

Fund and identify each allegedly *improper* off-label Lipitor prescription for which that Fund

paid.[11]  *See* 6/13/07 Transcript [D.E. 95] ("6/13/07 Tr.") (Ex. H) at 36-39; 6/13/07 Minute Order

---

[9]    Pfizer includes this section in light of the recent assignment of this action to this Court.

[10]    Lipitor was approved by the FDA in 1996, and since that time has always been approved for use in adults to both decrease total LDL ("bad") cholesterol and increase HDL ("good") cholesterol.  Lipitor has an extensive clinical trial and real-world track record.  Millions of patients rely on it to lower their cholesterol and prevent against heart attacks and strokes.

[11]    As Judge Brown recognized and Plaintiffs have conceded, the mere fact that a prescription may have been written for an "off-label" purpose (under Plaintiffs' definition) does not render the prescription improper because physicians may properly, and lawfully, write off-

*(cont'd)*

5

[D.E. 92] (Ex. I). Judge Brown found that the prescription information was plainly relevant to Pfizer's defense for two reasons: "One, [to] identify the damages; two, [to] dispute, on a particularized basis, whether or not the prescription was improper." 6/13/07 Tr. at 28. At the hearing on the matter, Judge Brown further advised Plaintiffs:

> The matter that the defendant is seeking is clearly discoverable. There's just no question about it. And *the defendant is not required to subscribe to your theory of your estimation of damages*. The defendant -- Just sitting here I can say I can foresee an argument that although in theory there might be some over-marketing of Pfizer's Lipitor that was based on this projected marketing plan, there would be a question about either whether or to what degree any damages were incurred by these individual plaintiffs for such activity.
>
> You've got to prove, as plaintiffs, not only that there was overly-aggressive marketing but actually that you were damaged by it and you were damaged by it in some way that is more than just speculation. And to the extent that the defendant is seeking to explore that, whether by your theory or to refute it by taking discovery to prove that your theory has no factual basis if you go on a more modeled, as you say, manner, that's still within the scope of discovery.

*Id.* at 32 (emphasis added); *see also id.* at 36-38.

On August 28, 2007, after the first Fund, Plumbers & Pipefitters, responded to Pfizer's interrogatory by providing information about just six Fund participants, Judge Brown granted Pfizer's motion to compel the other Funds to respond to Pfizer's interrogatory and identify the allegedly improper off-label Lipitor prescriptions for which they claim to have paid. 8/28/07 Minute Order [D.E. 115] (Ex. J). Shortly thereafter, the Funds' lawyers claimed that it was too hard to actually identify prescriptions that were allegedly improper, so the Funds amended their complaint to allege that Pfizer's alleged improper marketing of Lipitor created an "artificially inflated" price for the medicine. *See* November 14th Order at 3. Although Plaintiffs state that

---

*(cont'd from previous page)*

label prescriptions. *See* 6/13/07 Tr. at 27 (counsel for Plaintiffs: "[N]ot all off-label prescriptions, we agree as a matter of basic, positive law, are improper.").

they were trying to avoid Judge Brown's Order by amending their complaint, their new pleading, the Second Amended Complaint, was substantially similar to, and included all of the primary allegations found in, the First Amended Complaint, including the Funds' claims that Pfizer promoted Lipitor for off-label purposes and that Plaintiffs paid for improper or unnecessary off-label Lipitor prescriptions. *See, e.g.*, SAC ¶¶ 4, 5, 8-18, 70, 73, 80, 108-77, 220, 227, 241, 260, 270, 274, 283, 290, 295, 301, 305; *see also* November 14th Order at 5-6.

After filing the SAC, Plaintiffs moved to "modify" Judge Brown's Order of August 28, 2007 [D.E. 131] (Ex. K), asserting that their pleading and damages theory were now different and, as a result, the individual prescription information was no longer relevant under the SAC and would be unduly burdensome for the Funds to provide. Pfizer opposed Plaintiffs' motion [D.E. 139] (Ex. L), the Funds filed a reply under seal [D.E. 143], and Judge Brown heard lengthy argument on September 26, 2007, before taking the matter under advisement [D.E. 144] (Ex. M). *See also* 9/26/07 Transcript (Ex. N). In her Opinion and Order of November 14, 2007, denying Plaintiffs' Motion to Modify and directing the Funds to comply and identify the allegedly off-label prescriptions for which they claim they have paid,[12] Judge Brown found that many of the claims in the First Amended Complaint and the SAC were the same, and that her prior order applied to both.[13] Moreover, Judge Brown did not, as Plaintiffs claimed, instruct the Funds on how they should obtain the prescription information. The Order notes that the Funds themselves had indicated, "[a]s late as September 5, 2007," that "they planned to identify the prescriptions

---

[12]    The deadline for compliance with Judge Brown's Order was stayed. [D.E. 180] (Ex. O).

[13]    Thus, to the extent that this Court concludes, as did Judge Brown, that the operative allegations are the same, this Court can affirm Judge Brown's Orders because Plaintiffs never appealed Judge Brown's original order as applied to the First Amended Complaint. They simply argued that the differences between the First and Second Amended Complaints made her order inapposite as to the SAC and warranted "modification."

that were the result of improper marketing by identifying each participant who received prescriptions for Lipitor, and by reviewing the participant's medical records, to determine if the Lipitor prescription was for off-label uses." November 14th Order at 6.

Plaintiffs filed objections to Judge Brown's Order [D.E. 173] (Ex. P), which Pfizer opposed [D.E. 181] (Ex. Q), and Plaintiffs filed a reply [D.E. 188] (Ex. R). In his May 22nd Order, Judge Darrah set aside Judge Brown's Order on the ground that the burden of responding to the interrogatory "clearly outweighs the likely benefit of the discovery." May 22nd Order at 2. Citing Plaintiffs' "inten[t] to prove their case by the use of Defendant's own documents, commercially available data, econometric modeling and expert testimony,"[14] Judge Darrah found, without any hearing or oral argument, and in direct conflict with Judge Brown's findings, that information about the alleged improper prescriptions for which Plaintiffs claim to have paid is of "relatively small evidentiary value." *Id.* He noted that Pfizer had made "no assertion that a survey of the prescriptions paid for by Plaintiffs would be a valid statistical sample that could be used as evidence to rebut Plaintiffs' nationwide data." *Id.*

**B.    The December 21st Order**

On September 7, 2007, after months of trying to obtain other discovery responses from Plaintiffs, Pfizer filed the motion to compel that is the subject of Judge Brown's Order of December 21, 2007. *See* Pfizer's Motion to Compel [D.E. 133] (Ex. S). The basis for Pfizer's motion with regard to outstanding documents was that, over a year after Plaintiffs had agreed to provide documents responsive to several dozen targeted requests, the majority of Pfizer's requests remained outstanding, and seven of the eleven Funds had produced fewer than 400

---

[14]   After over two years of litigation, Plaintiffs still have never disclosed or described any econometric model on which they plan to rely.

pages. *See id.* at 3-9. Indeed, several Funds had produced fewer than 100 pages, in contrast to the hundreds of thousands of pages produced by Pfizer. *See id.* at 4. Pfizer had previously documented the vast deficiencies in Plaintiffs' responses to Pfizer's requests for documents in an earlier motion to compel and related filings before Judge Brown. Pfizer withdrew its prior motion in June 2007, based on Plaintiffs' assurances, to Pfizer and to Judge Brown, that proper discovery responses, already many months overdue, would be forthcoming. *See* 6/13/07 Minute Order (Ex. I). Plaintiffs never honored those commitments.

In their opposition to Pfizer's motion to compel [D.E. 140] (Ex. T), the Funds disregarded the vast majority of the discovery requests that were the subject of Pfizer's motion and focused on objecting to the few requests concerning participant information. They did not assert, by affidavit or otherwise, that each of the Funds had produced all documents in its custody or control that were responsive to the many outstanding requests seeking *non-participant-specific* information and documents.[15] To the contrary, the Funds stated in their opposition to Pfizer's motion to compel that their "document production thus far" was based on Judge Brown's prior discovery orders (directing them to respond to the *interrogatory* asking them to identify off-label Lipitor prescriptions), Pls.' Opp. to Mot. to Compel (Ex. T) at 2, rather than on the actual document requests served by Pfizer a year earlier. Those requests seek a number of categories of relevant documents that are distinct from the prescription-specific information addressed by her prior orders, including documents regarding: the Funds' initial

---

[15]    In fact, affidavits the Funds submitted to the District Court with their objections to Judge Brown's Order (the affidavits were not part of the record before Judge Brown), confirm that many had not produced all documents they believe are responsive and in their control. *See* Pfizer's Opp. to Pls.' Objections (12/21/07 Order) [D.E. 202] (Ex. U) at 3 n.1.

determination to pay for Lipitor; the Funds' practices with respect to reimbursement for Lipitor;

and any statements about Lipitor that the Funds relied upon. *See* December 21st Order at 8.

With regard to Pfizer's requests for certain prescription- or participant-specific

documents, including unredacted Lipitor prescription claims records, Plaintiffs opposed Pfizer's

motion to compel on the ground that such information was irrelevant to the newly-filed SAC and

that it would be unduly burdensome for them to produce the documents. Plaintiffs did not

provide any sworn statements or other evidence in support of their arguments that it would be too

burdensome for each of the Funds to obtain the medical and prescription records, such as those

that the "test" Fund, Plumbers & Pipefitters, had already obtained, pursuant to Judge Brown's

earlier order. Similarly, Plaintiffs did not provide any record support for their claim, in their

opposition to Pfizer's motion to compel, that "for many Funds 'control'" – which they agreed

includes the legal right to obtain – "either does not exist or is, at best, unclear." Pls.' Opp. to

Mot. to Compel (Ex. T) at 4. In fact, as Pfizer demonstrated in its reply in support of its motion

to compel, the record includes substantial evidence of the Funds' control over such documents:

> A number of the Funds have represented in their responses to requests for
> admission both that they maintain medical records for participants and that they
> receive medical records concerning participants in connection with their payment
> or reimbursement for pharmacy benefits. In addition, plan documents and
> contracts produced by those Funds who have actually provided such documents
> confirm that they have the right to obtain and use their participants' medical
> information for a number of purposes, including to adjudicate claims and in
> connection with a lawsuit or pursuant to a court order.

Pfizer's Reply [D.E. 141] (Ex. V), at 11-12 (citations to Plaintiffs' discovery responses omitted).

In addition, Plaintiffs' counsel had previously conceded that participant information – including

the names of participants who received Lipitor prescriptions – was covered by, and therefore

discoverable under, the parties' existing HIPAA-compliant protective order [D.E. 48] (Ex. W).

*See* 6/13/07 Tr. (Ex. H) at 34. The protective order was negotiated specifically to permit disclosure of participant information.

Judge Brown issued her Order granting Pfizer's motion to compel after full briefing and oral argument. The Order directs the Funds to produce documents responsive to Pfizer's outstanding requests – documents that, as Judge Brown recognized, the Funds had previously agreed to provide – as well as unredacted participant information. It does not, as Plaintiffs asserted in their objections to the Order, compel them to produce documents that "do not exist" or that "must be *created.*" Pls.' Objections (12/21/07 Order) [D.E. 196] (Ex. X) at 3; *id.* at 7.

In the May 22nd Order, Judge Darrah devoted less than half a page to addressing the December 21st Order before setting it aside in full. He found that Judge Brown had erred by "reliev[ing] Defendant of the burden of showing Plaintiffs' control over the requested documents," and that the burden to Plaintiffs of producing patient-specific documents outweighed the relevance of the information. May 22nd Order at 2.

## ARGUMENT

### I.    RELEVANT STANDARDS

This Court should reconsider, and overrule, under Rule 72(a), Plaintiffs' objections to Judge Brown's Orders. Reconsideration under Local Civil Rule 6.3 is merited where a party "demonstrates that the court overlooked 'controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.'" *United States Fid. & Guar. Co. v. Frosty Bites, Inc.*, 350 F. Supp. 2d 508, 511 (S.D.N.Y. 2004) (ellipsis in original; citation omitted); *accord MCI Worldcom Network Servs., Inc. v. Pelcrete Constr., Inc.*, No. 04Civ.7378, 2006 WL 559664, at *1 (S.D.N.Y. Mar. 6, 2006). "[A] court may grant a motion for reconsideration 'to correct a clear error or prevent manifest injustice.'" *United States Fid. & Guar. Co.*, 350 F. Supp. 2d at

11

511-12 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.

1992)) (granting motion for reconsideration where court overlooked controlling authority). It is

also well settled that a court may revisit and revise an erroneous interlocutory order entered by

another judge in the same case. *See DiLaura v. Power Auth.*, 982 F.2d 73, 76-77 (2d Cir. 1992).

Courts in both this Circuit and the Seventh have repeatedly emphasized that "magistrate

judges are afforded broad discretion" in resolving discovery disputes. *Highland Capital Mgmt.,*

*L.P. v. Schneider*, No. 02 Civ. 8098, 2008 WL 282769, at *2 (S.D.N.Y. Jan. 31, 2008) (to be

published in F. Supp. 2d); *accord Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*,

No. 02 C 2523, 2004 WL 609326, at *3 (N.D. Ill. Mar. 23, 2004). A district court should not

modify a magistrate judge's discovery order under Rule 72(a) unless it finds the ruling to be

"clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); *see, e.g., Fielding v. Tollaksen,*

510 F.3d 175, 178 (2d Cir. 2007). Under this deferential standard, reversal of magistrate judges'

discovery orders "'is appropriate only if their discretion is abused.'" *Lyondell-Citgo Refining,*

*LP v. Petroleos de Venezuela, S.A.*, No. 02 Civ. 0795, 2005 WL 551092, at *1 (S.D.N.Y. Mar. 9,

2005) (citation omitted); *accord Rubin v. Islamic Republic of Iran*, No. 03 CV 9370, 2007 WL

2219105, at *3 (N.D. Ill. July 26, 2007).[16]

## II.    JUDGE DARRAH OVERLOOKED CRITICAL FACTS AND CONTROLLING AUTHORITY IN SETTING ASIDE THE NOVEMBER 14TH ORDER

Judge Darrah disregarded a number of critical facts and controlling authorities in finding

that "the burden imposed by" Judge Brown's Order directing Plaintiffs to identify the allegedly

improper off-label Lipitor prescriptions for which they claim they have paid, "clearly outweighs

---

[16] Courts have repeatedly upheld Judge Brown's discovery rulings. *See, e.g., Jackson v. City of Chicago*, No. 03 C 8289, 2006 WL 2224052, at *9-11 (N.D. Ill. July 31, 2006); *FTC v. Pac. First Benefit, LLC*, 361 F. Supp. 2d 751, 755-57 (N.D. Ill. 2005); *Smith v. Sprint Commc'ns Co.*, No. 99 C 3844, 2003 WL 715748, at *3 (N.D. Ill. Feb. 27, 2003).

the likely benefit of the discovery." May 22nd Order at 2. As a result, the District Court

erroneously set aside Judge Brown's Order and severely restricted Pfizer's ability to prepare its

defense. This Court can, and should, correct that manifest error and reinstate the Order.

A.    **Judge Darrah Failed to Consider Plaintiffs' Own Allegations and Controlling Case Law in Finding That Specific Prescription Information Is of "Relatively Small Evidentiary Value"**

Judge Darrah's determination that information about the alleged improper prescriptions

paid for by the Funds is of minimal relevance overlooks Plaintiffs' own allegations in their SAC

and controlling authority establishing that information about Plaintiffs' *own* experiences and

alleged injury is not only relevant and discoverable, but is *required* to resolve their claims.

The District Court's finding that "[in] the SAC, Plaintiffs altered their theory of liability,

claiming that they were harmed by Defendant's off-label marketing due to the resulting

increased prices for Lipitor, *rather than suffering direct harm by being obligated to pay for off-

label prescriptions,*" May 22nd Order at 1 (emphasis added), confirms that the Court

fundamentally misapprehended the allegations set forth in the SAC. Plaintiffs did add a number

of new allegations to their amended pleading, including a price inflation theory of recovery. But

as Judge Brown found, after conducting a thorough analysis of both pleadings, and as Pfizer set

forth in its opposition to Plaintiffs' objections, the SAC continues to include allegations that the

Funds paid for improper off-label Lipitor prescriptions as a result of Pfizer's promotion of

Lipitor. *See, e.g.,* SAC ¶¶ 4, 5, 8-18, 70, 73, 80, 108-77, 220, 227, 241, 260, 270, 274, 283, 290,

295, 301, 305; *see also* November 14th Order at 5 ("[T]he Second Amended Complaint

13

continues the allegations that Plaintiffs paid for improper prescriptions."); Pfizer's Opp. to Pls.'

Objections (11/14/07 Order) (Ex. Q) at 4, 7-9.[17]

Although Plaintiffs have attempted to distance themselves from the allegations in their

own Complaint, a plain reading of the SAC establishes that, as Judge Brown found,

> [the SAC] does, in fact, allege that a primary component of Pfizer's allegedly
> illegal scheme has been an effort to expand the market for Lipitor by promoting
> the off-label use of the drug, which "resulted in an artificially increased number of
> Lipitor prescriptions *for which the Plaintiff Funds were required to pay . . . .*"
> (Second Am. Compl. ¶¶ 3-4, emphasis added.) Plaintiffs further claim that,
> "Plaintiffs paid improperly inflated prices for Lipitor and *for an increased number
> of Lipitor prescriptions* generated through Pfizer's illegal marketing tactics." (*Id.*
> ¶ 5, emphasis added.)
>
> Each of the Plaintiffs alleges not only that it paid an inflated price for
> Lipitor but also that it paid for "an increased number of Lipitor prescriptions
> generated through Pfizer's illegal marketing campaign." (*Id.* ¶¶ 8-18.)
>
> . . . Although Plaintiffs' damage calculation is now based on a theory that
> Plaintiffs had to pay an artificially inflated price for Lipitor prescriptions ([SAC]
> ¶¶ 6, 178), the underlying premise is that the price inflation was the result of
> fraudulently increased demand. (*Id.* ¶ 5.) The cause of Plaintiffs' injuries is
> alleged to have been that Plaintiffs incurred additional costs resulting from paying
> for the increased number of Lipitor prescriptions, as well as paying for Lipitor at
> an artificially inflated price. (*Id.* ¶ 220.)

November 14th Order at 5-6.  In his Order, Judge Darrah does not address Judge Brown's

analysis of the SAC or consider any of Plaintiffs' allegations that Pfizer caused the Funds to pay

for improper prescriptions.  Those allegations are critical to a fair evaluation of the relevance of

the discovery requested by Pfizer and ordered by Judge Brown, and the District Court's failure to

account for them warrants reconsideration. *See D'Antonio v. Metro. Transp. Auth.*, No. 06 cv

4283, 2008 WL 582354, at *3 (S.D.N.Y. Mar. 4, 2008) (granting motion for reconsideration

---

[17]    Indeed, as Judge Brown noted, in Plaintiffs' brief in support of their motion for leave to file
the SAC, the Funds defined "Plaintiffs" as "'third-party payors *who paid for an increased
number of prescriptions for Lipitor resulting from Pfizer's illegal marketing practices.*'"
November 14th Order at 5 (emphasis added) (citation omitted).

where court had overlooked plaintiff's own allegations in its original order denying defendant's motion to dismiss on the pleadings). As Pfizer argued, and Judge Brown found, because the SAC includes the same allegations about Plaintiffs' alleged payment for "unnecessary" prescriptions, the prescription information requested by Pfizer's interrogatory remains as relevant and discoverable under the SAC as it was under Plaintiffs' earlier complaints.[18]

Given the allegations in the SAC, and Plaintiffs' claims for tens of billions of dollars in damages, Pfizer should, as Judge Brown found, be able to obtain discovery that is relevant to their claims that Pfizer's marketing caused *the Funds* – the only plaintiffs before the Court – to pay for unnecessary off-label Lipitor prescriptions, and should not be limited to the "nationwide data" on which Plaintiffs purport to rely to prove their claims. *See* November 14th Order at 7 ("Pfizer has a right to discover the information that would confirm or refute those allegations, whether or not Plaintiffs are interested in using that information in their own case."); *see also* 6/13/07 Tr. at 32-33, 36-37. *Cf. In re ATM Fee Antitrust Litig.*, No. C 04-02676, 2007 U.S. Dist. LEXIS 47943, at *14 (N.D. Cal. June 25, 2007) (scope of discovery is defined by "the specific subject matter presented by Plaintiffs' complaint," not one party's "theory of the case").[19] The

---

[18]  The basis for Plaintiffs' Motion to Modify Judge Brown's Order of August 28, 2007, directing all of the Funds to respond to Pfizer's interrogatory and identify the alleged off-label prescriptions, was that Plaintiffs had amended their complaint and that the information was no longer relevant to their claims under the SAC. If this Court determines that Judge Brown, in rejecting that argument and denying Plaintiffs' motion, did nor err in finding that the SAC "contain[s] substantially the same claims that Plaintiffs paid for an unnecessarily and artificially increased number of prescriptions," November 14th Order at 6-7, this Court need not go further, and should reinstate the Order. Judge Darrah's determination to set aside that Order is a function of his fundamental misapprehension of the SAC.

[19]  Indeed, notwithstanding Plaintiffs' arguments that the prescription information that Judge Brown directed them to provide is no longer relevant, the Funds themselves have aggressively sought information about Lipitor prescriptions from both Pfizer and a non-party, IMS Health. *See* Pls.' Objections (11/14/07 Order) (Ex. Q) at 12-13 & n.6.

District Court's finding that aggregate nationwide data and hypothetical statistical models provide more reliable evidence of liability and injury to each Fund, than each Fund's own actual data (May 22nd Order at 2), is simply erroneous.

To defend against Plaintiffs' claims that they have paid for "unnecessary" off-label Lipitor prescriptions as a result of Pfizer's promotion, and to determine whether each of the Funds even has standing to proceed with this action, Pfizer must be permitted to explore whether the Funds actually paid for any Lipitor prescriptions that fall within their own definition of "off-label" or "unnecessary," and test whether any such prescription was written by a doctor based on his or her independent judgment, training, and patient assessment, or whether it was written based on some allegedly improper promotion or advertisement by Pfizer. *See, e.g., In re St. Jude Med., Inc.*, 522 F.3d 836, 840, 842 (8th Cir. 2008) (reversing certification of nationwide consumer class on predominance grounds, holding that "evidence that an individual plaintiff (or his or her physician) did not rely on representations from [defendant about its medical device] . . . is highly relevant and probative on the question [of] whether there is a causal nexus between alleged misrepresentations and any injury," and affirming "the right of a defendant to present [such] evidence [to] negat[e] a plaintiff's direct or circumstantial showing of causation and reliance"); *Vista HealthPlan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893, at *1, 6 (C.D. Cal. Nov. 13, 2007) (explaining, in another action by a health insurance entity claiming damages as a result of alleged off-label marketing, that "in order to show causation, Plaintiff will have to prove, for each prescription for which it seeks a refund, that the prescription was for an off-label use, and that the prescribing physician based his or her decision to prescribe for an off-label use on a communication from Amgen"); *see also Palmer v. City of Chicago*, 755 F.2d 560, 570 (7th Cir. 1985) ("[N]amed plaintiffs who represent a class 'must allege and show that they

16

personally have been injured . . . .'") (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *accord Doe v. Blum*, 729 F.2d 186, 190 n.4 (2d Cir. 1984).

Indeed, as Pfizer set forth in its letter of supplemental authority to Judge Darrah, the Second Circuit's decision in *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), confirms both that such evidence is *required* for Plaintiffs to establish their claims, and that Pfizer is entitled to seek it in support of its defense. *See* 4/8/08 Letter to Judge Darrah (Ex. D).[20] In *McLaughlin*, the Second Circuit reversed the district court's certification of a nationwide RICO class of "light" cigarette consumers who alleged that defendants' misrepresentations about the cigarettes "led them to buy Lights in greater quantity than they otherwise would have and at an artificially high price." *McLaughlin*, 522 F.3d at 219-20. The court repeatedly emphasized that evidence of which, if any, marketing statements *each plaintiff* saw and relied upon, and *each plaintiff's* actual out-of-pocket damages, would be critical to their claims, and defendants' defenses, under RICO. *See, e.g., id.* at 223, 226-28. The court noted, for example, that "[i]ndividualized proof" of reliance would be "needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative." *Id.* at 223; *see also id.* at 226 ("[E]stablishing the first link in the causal chain – that defendants' misrepresentation caused an increase in market demand – would require individualized proof, as any number of other factors could have led to this increase."). The Second Circuit further rejected, on due process grounds, plaintiffs' plan to "prove collective damages" through a "fluid recovery" approach, by establishing "'aggregate liability'" and then

---

[20] Judge Darrah disregarded *McLaughlin* entirely, despite having expressed his intent to transfer to this District immediately after ruling on Judge Brown's Orders, as he subsequently did. Second Circuit authority, of course, governs issues of federal law, such as RICO, in this Court. *See Smith v. NBC Universal*, 524 F. Supp. 2d 315, 323 (S.D.N.Y. 2007) (after transfer under 28 U.S.C. § 1404, Circuit law of the transferee court applies to issues of federal law).

allocating damages based on the number of light cigarettes purchased by each class member. *Id.* at 231 & n.9 (citation omitted). As the court explained:

> When fluid recovery is used to permit the mass aggregation of claims, the right of defendants to challenge the allegations of individual plaintiffs is lost, resulting in a due process violation. The Third Circuit properly observed . . . that "actual injury cannot be presumed, and *defendants have the right to raise individual defenses against each class member.*" 259 F.3d 154, 191-92 (3d Cir. 2001).

*Id.* at 232 (emphasis added) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 191-92 (3d Cir. 2001)). Here, Judge Darrah's Order prevents Pfizer from even obtaining this essential information from Plaintiffs through discovery.

*McLaughlin* thus confirms that, notwithstanding Plaintiffs' price inflation theory and intent to attempt to establish liability and damages on a classwide basis through "nationwide data" and expert testimony, information about individual, *Plaintiff-specific* issues of causation, reliance, and injury – such as the prescription information that Judge Brown directed Plaintiffs to produce – is not only relevant, but is critical to the fair resolution of Plaintiffs' claims and to protecting Pfizer's due process rights. *See, e.g.,* December 21st Order at 11 ("[T]he information Pfizer seeks goes directly to the question of whether Plaintiffs paid for more Lipitor prescriptions than necessary and whether Plaintiffs paid too much for Lipitor. That is the heart of Plaintiffs' claims."). The District Court's suggestion that such information is of minimal relevance because it would provide, at best, a "statistical sample" of questionable utility "to rebut Plaintiffs' nationwide data," May 22nd Order at 2, is analytically unsound and conflicts directly with Circuit Court authority. In fact, it is the "nationwide," "classwide," or "general" proof that Plaintiffs purport to rely on – *not* the Plaintiff-specific evidence that Pfizer is seeking – that is of highly doubtful relevance and validity. *See McLaughlin,* 522 F.3d at 224-25 & n.6.

Indeed, the Second Circuit in *McLaughlin* firmly rejected plaintiffs' price inflation theory of injury as too speculative *as a matter of law*. *See id.* at 230 ("[P]laintiffs cannot show injury due to overall price impact on a class-wide basis . . . because their price impact theory, like their loss of value theory, fails as a matter of law."); *see also id.* at 228-29. As Pfizer argued before Judge Darrah, numerous other courts, including this one and New Jersey's highest court,[21] have similarly refused to accept such theories of injury and causation outside the securities fraud context, particularly in pharmaceutical marketing cases like this one. *See In re Rezulin Prods. Liab. Litig.*, 524 F. Supp. 2d 436, 441 (S.D.N.Y. 2007); *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1087-88 (N.J. 2007); *see also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337-39 (S.D. Fla. 2007); *Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 380-81 (D.N.J. 2004). Given the extremely doubtful viability of Plaintiffs' price inflation theory in light of *McLaughlin* and other authorities, it certainly should not circumscribe Pfizer's discovery rights so fundamentally. Of course, to determine that Pfizer is entitled to the discovery directed by Judge Brown, it is not necessary for this Court to rule on the validity of Plaintiffs' theory of injury. Rather, it need only consider whether Plaintiffs should produce the information so that Pfizer may have the opportunity to fairly challenge that theory.

**B.    Judge Darrah Failed to Consider Key Facts and Controlling Law in Setting Aside Judge Brown's Finding That the Discovery Does Not Pose an Undue Burden**

The District Court also overlooked critical facts and authority in setting aside Judge Brown's finding that it would not be unduly burdensome for Plaintiffs to comply with her earlier order and respond to Pfizer's interrogatory. First, Judge Darrah accepted Plaintiffs' protest that it would be prohibitively burdensome for them to comply. This assertion, however, was based

---

[21]    Plaintiff Welfare Fund of Teamsters Local Union 863 is a New Jersey resident and brings its state law claims under New Jersey law. *See* SAC ¶ 1.

solely on their counsel's description of the tasks they performed, and certain administrative

hurdles they encountered, in the course of responding to the interrogatory for the "test Fund,"

Plumbers & Pipefitters. *See* May 22nd Order at 2. Plaintiffs did not offer a single affidavit from

a Fund employee, or otherwise articulate any burden on the part of the Funds themselves. That

Plaintiffs' counsel will have to devote time to collecting and reviewing records to respond to

discovery on behalf of each of their clients (many of whom have produced fewer than a few

hundred pages) is plainly not a surprising or compelling fact. As Judge Brown found, it certainly

does not amount to undue burden in a case where the Funds are seeking billions of dollars and

have demanded, and received, hundreds of thousands of pages of discovery from Pfizer.[22]

Plaintiffs' burden claim is also ironic in the face of their aggressive efforts to require *non-parties*

to respond to discovery requests involving prescription-specific information. *See supra* note 19.

Moreover, the District Court overlooked the facts, set forth by Pfizer, that: (i) Plaintiffs

had pursued the records from Plumbers & Pipefitters' participants' physicians without providing

them HIPAA-compliant authorizations from the participants; (ii) even without authorizations,

Plaintiffs *were* able to collect medical records pursuant to HIPAA and their contractual rights

with their participants, and to analyze them and respond to Pfizer's interrogatory within a few

weeks; and (iii) the parties subsequently worked out an agreed letter to physicians that would

accompany valid authorizations from Fund participants and greatly facilitate the records

collection process. *See* Pfizer's Opp. to Objections (11/14/07 Order) (Ex. Q) at 14-15.

Judge Darrah also overlooked facts and authority cited by Pfizer, and discussed by Judge

Brown, that establish that Plaintiffs' claimed concerns about their participants' privacy do not

---

[22]   Moreover, Judge Brown's Orders do not pose any imminent burden to Plaintiffs because the parties have stipulated to stay all further discovery pending the resolution of Pfizer's motion to dismiss. *See supra* note 5.

pose a burden requiring reversal of Judge Brown's Order. As Pfizer set forth in its opposition to Plaintiffs' objections, the law is clear that HIPAA permits parties to obtain, and non-parties to disclose, relevant non-party medical records and other protected health information during discovery where, as here, the court has entered a HIPAA-compliant protective order [D.E. 48] (Ex. W). *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 924-25 (7th Cir. 2004) (citing and discussing the relevant HIPAA provision and regulations promulgated thereunder, and explaining that a "qualified protective order" permits the disclosure of protected information). *See also* Pfizer's Opp. to Objections (11/14/07 Order) at 12-13. The District Court disregarded HIPAA's provisions permitting disclosure and the parties' protective order – which would fully protect the confidentiality of participants' medical information – not to mention the fact that the Funds have contractual rights to pursue claims on behalf of their participants, and to obtain and use their medical information to do so.[23]

Finally, Judge Darrah overlooked the mandate of Rule 26(b)(2)(C)(iii) to consider multiple factors in determining whether the burden of discovery is undue, including "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). As established above, the District Court failed to consider a number of facts, as well as controlling authority, establishing the significance of the issues at stake, including the issues of causation, reliance, and injury – three fundamental elements of Plaintiffs' claims that require individualized proof. Judge Darrah also misapprehended entirely the importance of

---

[23] *See* November 14th Order at 7 ("Plaintiffs are ERISA benefit funds of which the participants are the beneficiaries. The trustees of the Plaintiff funds are fiduciaries of the beneficiaries, and the damages to be recovered, if any, become property of the funds to be held in trust for the beneficiaries."); *see also* Pfizer's Opp. to Objections (12/21/07 Order) (Ex. U) at 12 & n.11 (citing Fund statements and documents establishing contractual rights to obtain records).

individual prescription information, and indeed, the superiority of such individual information over the type of aggregate data on which Plaintiffs intend to rely, to resolving the critical issues of causation, reliance, and injury. *See supra* Part II.A.  Judge Darrah also ignored the amount in controversy and the fact that Plaintiffs are organizations with significant resources, not individuals.  As Judge Brown noted: "Plaintiffs here seek a huge recovery, a return of all of the money obtained by Pfizer as a result of the alleged scheme. (Second Am. Compl. ¶ 229.)  They estimate Pfizer's unlawful sales of Lipitor during the Class Period to be in the tens of *billions* of dollars. (*Id.* ¶ 7.)."  November 14th Order at 7.  When the factors set forth under Rule 26(b) are evaluated against the claimed burden, as required by the Rule, it is Judge Darrah's perfunctory ruling, not Judge Brown's reasoned analysis, that must be set aside as erroneous.  As Judge Brown explained, "[g]iven the large sums of money that Plaintiffs seek, it is understandable that Pfizer wants to know whether Plaintiffs' own experiences support their claims. . . . [T]he parties' judgments about how to proceed, including, for example, whether settlement is possible, depend on getting a firm grasp of the facts behind the allegations."  November 14th Order at 8.

In sum, Judge Darrah overlooked Plaintiffs' own allegations, other facts in the record, and controlling authority in finding that information about the alleged improper prescriptions for which Plaintiffs claim to have paid is of "relatively small evidentiary value," that its relevance is outweighed by Plaintiffs' purported burden, and that Pfizer should be limited to "rebut[ting]" the "nationwide data" and "econometric modeling" that Plaintiffs have indicated they intend to rely on.  May 22nd Order at 2.  The facts and authority that the District Court overlooked confirm that the value of the prescription information is, as Judge Brown found, highly probative, and that the benefits of the discovery to the litigation outweigh the claimed burden.  Judge Brown's Order was thus not clearly erroneous or contrary to law and should be reinstated.

**III.    JUDGE DARRAH OVERLOOKED CRITICAL FACTS AND CONTROLLING AUTHORITY IN SETTING ASIDE THE DECEMBER 21ST ORDER**

The two paragraphs of the District Court's May 22nd Order that address, and set aside in full, Judge Brown's Order of December 21, 2007, reveal that Judge Darrah also overlooked, or misapprehended, a number of critical facts and authorities that were submitted by Pfizer. Those overlooked facts and authorities support Judge Brown's Order directing Plaintiffs to respond to dozens of outstanding requests for documents and provide unredacted prescription records.

With regard to the District Court's finding that Judge Brown erred by "reliev[ing] Defendant of the burden of showing Plaintiffs' control over the requested documents" (May 22nd Order at 2), the District Court overlooked the critical fact that Plaintiffs had not raised that argument in their opposition to Pfizer's motion to compel before Judge Brown. *See* Pfizer's Opp. to Pls.' Objections (12/21/07 Order) (Ex. U) at 7-8. More importantly, the District Court overlooked facts cited by Pfizer establishing that it *had* satisfied any burden it may have had to make a threshold showing of Plaintiffs' control of the outstanding documents. Specifically, as Pfizer demonstrated in its briefing before Judge Darrah, Plaintiffs had not only previously agreed, in their initial discovery responses, to provide documents in response to the vast majority of the outstanding discovery requests (to the extent the documents existed and were in their control, including within their legal right to obtain), but had also reassured Pfizer of that commitment in exchange for Pfizer's agreement, in June 2007, to withdraw its prior motion to compel. *See, e.g.,* Pfizer's Opp. to Pls.' Objections (12/21/07 Order) at 3. Pfizer also established that Plaintiffs' own initial discovery responses, and publicly available Fund documents, offer substantial evidence that Plaintiffs do, in fact, possess or have control over many of the documents at issue, including prescription claim and medical records for their participants. *See id.* at 4.

When Pfizer moved to compel again, after Plaintiffs had failed to supplement their productions or provide any affidavit on behalf of any Fund indicating that it had produced all responsive documents within its control, Plaintiffs opposed the motion only with conclusory arguments that they do not "'possess or control much of the *individual physician and patient information* Pfizer seeks.'" December 21st Order at 9 (emphasis added) (quoting Pls.' Opp. at 7-8). Plaintiffs ignored completely the many categories of outstanding documents that do not involve patient- or prescription-specific information (such as Fund reports and audit documents). They never argued to Judge Brown that they had produced all such documents within their control, or that Pfizer had failed to meet its burden of establishing Plaintiffs' control over such documents.[24] In the absence of such arguments, and in the face of the evidence cited above demonstrating that Plaintiffs *do* have control over many of the documents at issue, Judge Brown did not mistakenly relieve Pfizer of any burden, or err in directing Plaintiffs to produce what they had previously agreed to provide.[25]

In addition, with respect to Pfizer's requests for documents involving prescription- and patient-specific information, including unredacted records of prescription claims paid by the Funds, the District Court overlooked the same critical allegations and controlling authority that

---

[24] To the contrary, they asserted before Judge Brown that their "document production thus far" had been focused on complying with Judge Brown's prior order regarding the identification of specific off-label prescriptions, not on responding to Pfizer's actual document requests. *See* Pfizer's Opp. to Pls.' Objections (12/21/07 Order) at 3.

[25] The affidavits that Plaintiffs submitted to Judge Darrah with their objections do not change this analysis. The affidavits were prepared only in an attempt to avoid Judge Brown's Order and were never part of the record before her. That they purport to show that certain Funds have complied with certain discovery obligations, or do not have a few categories of documents, is no reason to vitiate Judge Brown's Order. Pursuant to that Order, Plaintiffs are required to produce only what remains outstanding and is in their control, nothing more, nothing less. A number of the affidavits confirm that such documents plainly do exist. *See* Pfizer's Opp. to Objections (12/21/07 Order) at 3 & n.1; *id.* at 12 & n. 11.

support Judge Brown's Order of November 14, 2007, directing Plaintiffs to identify the alleged improper off-label prescriptions they claim they have paid for. *See supra* Part II; *see also* Pfizer's Opp. to Objections (12/21/07 Order) at 9-15; 4/8/08 Letter to Judge Darrah.

The December 21st Order sets forth in detail the allegations in Plaintiffs' own SAC that demonstrate the continuing relevance of documents involving prescription-specific information. *See, e.g.*, December 21st Order at 8 (finding "documents that would demonstrate, for example, the amounts that Plaintiffs paid for Lipitor over time, and whether Plaintiffs actually paid for an increased number of prescriptions of Lipitor as a result of Pfizer's alleged marketing scheme" remain relevant and discoverable). Judge Darrah's Order simply ignores Plaintiffs' allegations and Judge Brown's analysis. The District Court similarly disregarded authority – namely *Ashcroft* and Rule 26(b)(2)(C)(iii), discussed *supra*, and in Judge Brown's Order – that support Judge Brown's rejection of Plaintiffs' privacy and undue burden objections. *See* December 21st Order at 10-12; Pfizer's Opp. to Objections (12/21/07 Order) at 11-14. The District Court's finding that the burden of producing documents containing patient-specific information outweighs its relevance is thus erroneous for the same reasons as its ruling setting aside the November 14th Order. The December 21st Order should be reinstated in full.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that this Court grant its motion for reconsideration and reinstate Judge Brown's Orders in their entirety.

Dated: New York, New York
June 6, 2008

Respectfully submitted,

/s/ Mark S. Cheffo
Barbara Wrubel
barbara.wrubel@skadden.com
Mark S. Cheffo
mark.cheffo@skadden.com

25

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile:  (212) 735-2000

Attorneys for Defendant Pfizer Inc

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK   )

ERIKO NAGAO, being duly sworn, deposes and says:

1.     I am over eighteen years of age, not a party to the action and am employed by Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036.

2.     That on the 6th day of June, 2008, I served true copies of the foregoing **Defendant Pfizer Inc's Notice of Motion for Reconsideration of the Minute Order of May 22, 2008, Memorandum of Law and Declaration re: same** by hand to:

> **Grant & Eisenhofer**
> **29[th] Floor**
> **485 Lexington Avenue**
> **New York, NY 10017**

_____
Eriko Nagao

Sworn to before me this
6th day of June, 2008

_____
Notary Public

CARMEN L. FERNANDEZ
Notary Public, State of New York
No. 4905737
Qualified in Bronx County _Bronx County_
Certificate Filed in ~~New York County~~
Commission Expires Sept. 14, 20_09_