GRANT & EISENHOFER P.A.
Jay W. Eisenhofer [JE 5503]
Michael J. Barry
Stephen G. Grygiel
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone (646) 722-8500
Facsimile (646) 722-8501

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SOUTHERN ILLINOIS LABORERS' AND EMPLOYERS HEALTH AND WELFARE FUND; NECA-IBEW WELFARE TRUST FUND; MIDWESTERN TEAMSTERS HEALTH AND WELFARE FUND; THE WELFARE FUND OF TEAMSTERS LOCAL UNION 863; PLUMBERS AND PIPEFITTERS LOCAL UNION 630 WELFARE TRUST FUND; CLEVELAND BAKERS AND TEAMSTERS HEALTH AND WELFARE FUND; ELECTRICAL WORKERS BENEFIT TRUST FUND; FIRE & POLICE RETIREE HEALTH CARE FUND, SAN ANTONIO; LABORERS' DISTRICT COUNCIL BUILDING AND CONSTRUCTION HEALTH AND WELFARE FUND; LABORERS' DISTRICT COUNCIL HEAVY AND HIGHWAY UTILITY HEALTH AND WELFARE FUND; and NEW YORK CITY POLICE SERGEANTS BENEVOLENT ASSOCIATION HEALTH & WELFARE FUNDS, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 08cv5175 (SHS) ECF Case |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PFIZER INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT PFIZER INC'S**
**MOTION FOR RECONSIDERATION OF THE MINUTE ORDER OF MAY 22, 2008**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 4

    A.    Plaintiffs' Claims Against Pfizer ..................................................................4

    B.    Pfizer's Discovery Tactics Are Rejected By The Court ..........................................5

        1.    The May 22 Order Sets Aside The Magistrate Judge's November 14, 2007 Order ......................................................... 6

        2.    The May 22 Order Sets Aside The Magistrate Judge's December 21, 2007 Order. ......................................................... 7

    C.    Pfizer Seeks Reconsideration In The Southern District Of New York ................................................................................7

ARGUMENT ........................................................................................................................... 8

I.    Pfizer Fails to Clear Local Civil Rule 6.3's High Standard................................8

    A.    Judge Darrah Did Not Overlook Any Controlling Decisions Put Before Him......................................................................10

    B.    Judge Darrah Did Not Overlook Any Factual Matters Put Before Him ...................................................................................15

II.    Pfizer's Motion Fails Under The Law Of The Case Doctrine ...........................18

    A.    No Intervening Decision Of A Superior Court Exists ...........................19

    B.    Pfizer Offers No New Evidence .......................................................20

    C.    No Clear Error Creates Any Manifest Injustice....................................20

CONCLUSION....................................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

CASES

*Anglo Am. Ins. Group, P.L.C. v. Calfed Inc., X.C.F.*,
 940 F. Supp. 554 (S.D.N.Y. 1996)............................................................................8

*Bridge v. Phoenix Bond & Indem. Co.*,
 128 S. Ct. 2131 (2008).................................................................................12, 19

*Dresser Indus., Inc. v. First Travel Corp.*,
 Nos. Civ. 88-581E, 90-470E, 1990 WL 159037 (W.D.N.Y. Oct. 11, 1990)...........................8

*Fezzani v. Bear Stearns & Co.*,
 No. 99 Civ. 0793, 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004) ............................................8

*Florentia Contracting Corp. v. The Resolution Trust Co.*,
 No. 92 Civ. 1188, 1993 WL 127187 (S.D.N.Y. Apr. 22, 1993)............................................20

*Gray v. Faulkner*,
 148 F.R.D. 220 (N.D. Ind. 1992) ...........................................................................11

*Halder v. Intern. Tel. & Tel. Co.*,
 75 F.R.D. 657 (E.D.N.Y. 1977) ...................................................................... 10-11

*Hammer v. First, UNUM Life Ins. Co.*,
 No. 01 Civ. 9307, 2005 WL 525445 (S.D.N.Y. Mar. 7, 2005) ................................................9

*Johnson Matthey, Inc. v. Research Corp.*,
 No. 01-cv-8115, 2003 WL 24136087 (S.D.N.Y. June 16, 2003) ...........................................20

*Kestner v. Pratt & Whitney Canada, Inc.*,
 No. 94-3176, 1995 WL 598995 (E.D. Pa. Oct. 6, 1995) .......................................................10

*Manko v. Deutsche Bank*,
 No. 02 CV 10180, 2006 WL 1443200 (S.D.N.Y. May 25, 2006) ......................................8, 10

*McLaughlin v. American Tobacco Co.*,
 522 F.3d 215 (2d. Cir. 2008)..............................................................................11, 12, 19

*Northwestern Mem'l Hosp. v. Ashcroft*,
 362 F.3d 923 (7th Cir. 2004) ...........................................................11, 13, 14, 19

*In re Rezulin Prods. Liab. Litig.*,
 224 F.R.D. 346 (S.D.N.Y. 2004) ...............................................................8-9, 18, 19

*Rockwell Intern. Corp. v. H. Wolfe Iron and Metal Co.*,
    576 F. Supp. 511 (D.C. Pa. 1983) ...........................................................................................11

*Simoiu v. U.S. Marshals Serv.*,
    No. 00 Civ. 7133, 2005 WL 646099 (S.D.N.Y. Mar. 18, 2005) ...........................................19

*Sparks Tune-Up Centers, Inc. v. Pancherve*,
    No. 90 C 4369, 1991 WL 101667 (N.D. Ill. June 4, 1991) ...................................................21

*Surles ex rel Johnson v. Greyhound Lines, Inc.*,
    474 F.3d 288 (6th Cir. 2007) .................................................................................................15

*Technical Concepts, L.P. v. Continental Mfg. Co.*,
    No. 92 C 7476, 1994 WL 262119 (N.D. Ill. June 10, 1994) .................................................21

*Tellium, Inc. v. Corning Inc.*,
    No. 03 Civ. 8487, 2004 WL 1403297 (S.D.N.Y. June 22, 2004)......................................9, 17

*Thomas v. iStar Fin., Inc.*,
    520 F. Supp. 2d 478 (S.D.N.Y. 2007).......................................................................................9

*U.S. ex rel Smith v. New York Presbyterian Hosp.*,
    No. 06 Civ. 4056, 2007 WL 2142312 (S.D.N.Y. July 18, 2007) .................................8, 18, 20

*Word v. Croce*,
    No. CIV 6496, 2001 WL 755394 (S.D.N.Y. July 5, 2001) .......................................................8

*WTC Captive Ins. Co, Inc. v. Liberty Mutual Fire Ins. Co.*,
    537 F. Supp. 2d 619 (S.D.N.Y. 2008)...................................................................................9, 10

**STATUTES**

Health Insurance Portability and Accountability Act of 1996 ("HIPPA") ....................................13

**OTHER AUTHORITIES**

Local Civil Rule 6.3 ......................................................................................... 7, 8, 9-10

Federal Rule of Civil Procedure 26(b)................................................................. passim

Federal Rule of Civil Procedure 34 .............................................................................10

Federal. Rule of  Civil Procedure 54(b)...........................................................7, 8, 18

## PRELIMINARY STATEMENT

Rehashing the same arguments it made in at least six motions and pleadings[1] and in at least five hearings before Judge John J. Darrah and Magistrate Judge Geraldine S. Brown in the Northern District of Illinois,[2] before whom this intensely litigated case had been pending for over two years, Defendant Pfizer Inc. ("Pfizer") asks this Court to review and analyze hundreds of pages of background and briefing and to reconsider, and reverse, Judge Darrah's Minute Order of May 22, 2008 (the "May 22 Order"). Pfizer, however, cannot meet the high standard for reconsideration in this district. Pfizer cannot show, as it must, that Judge Darrah overlooked any controlling precedent or controlling factual matters, nor can Pfizer identify any intervening decisions of a superior court, new evidence or clear error that would justify reconsideration of the May 22 Order.

The May 22 Order sustained Plaintiffs' Objections to two discovery rulings issued by the Magistrate Judge, on November 14, 2007 ("November 14 Order") and December 21, 2007 ("December 21 Order"). The May 22 Order also affirmatively granted Plaintiffs' Motion to Modify Discovery, which the Magistrate Judge had denied. Pfizer chose not to ask Judge

---

[1] *See* Defendant Pfizer Inc.'s Opposition to Plaintiffs' Objections to Magistrate Judge Brown's Order Dated December 21, 2007 Granting Pfizer's Motion to Compel, filed January 24, 2008 (Dkt. No. 202); Defendant Pfizer Inc.'s Opposition to Plaintiffs' Amended Objections to Magistrate Judge Brown's Order dated November 14, 2007 Denying Plaintiffs' Motion to Modify Discovery, filed December 17, 2007 (Dkt. No. 181); Pfizer's Opposition to Plaintiffs' Motion to Modify Discovery, filed September 19, 2007 (Dkt. No. 139); Pfizer Inc.'s Motion to Compel Plaintiffs to Provide Documents, Unredacted Claims Records, and Responses Concerning Pfizer's Proprietary Materials, filed September 7, 2007 (Dkt. No. 133); Pfizer Inc.'s Notice of Filing of Supplemental Evidence in Further Support of its Motion to Compel the Disclosure of Allegedly Improper Off-Label Lipitor Prescriptions, filed August 14, 2007 (Dkt. No. 106); Pfizer Inc.'s Motion to Compel the Disclosure of Allegedly Improper Off-Label Lipitor Prescriptions, filed August 6, 2007 (Dkt. No. 101).

[2] *See* Hearing Tr. from September 26, 2007 hearing before Magistrate Judge Brown (Dkt. No. 193); Hearing Tr. from September 4, 2007 hearing before Judge Darrah (discussing discovery issues in context of Plaintiffs' motion to file the SAC) (Dkt. No. 138); Hearing Tr. from August 28, 2007 hearing before Magistrate Judge Brown (Dkt. No. 150); Hearing Tr. from August 15, 2007 hearing before Magistrate Judge Brown (Dkt. No. 217); Hearing Tr. from July 19, 2007 hearing before Magistrate Judge Brown (also Dkt. No. 217).

Darrah, who is very familiar with the case and its numerous issues, to reconsider his ruling. Pfizer waited to file its reconsideration motion until after Judge Darrah had transferred this action to this Court. Pfizer apparently figures it is more likely to get a second bite at the same apple if the apple moves to a different orchard.

Issuing the May 22 Order, Judge Darrah, after full briefing and after the Plaintiffs' Objections had been pending before him for four months,[3] correctly sustained the Plaintiffs' Objections to the November 14 and December 21 Orders. Judge Darrah rightfully recognized that Plaintiffs' Second Amended Complaint ("SAC") filed on September 4, 2007, fundamentally altered the nature of the claims asserted and damages sought, and as a result rendered irrelevant the discovery Magistrate Judge Brown ordered produced in her November 14 and December 21 Orders. Magistrate Judge Brown's discovery rulings were based on a damages theory Plaintiffs had formally, expressly and repeatedly renounced in amending their complaint. Judge Darrah also correctly concluded that the Magistrate Judge had completely inverted the burden of proof, impermissibly excusing Pfizer from meeting its obligation to prove that Plaintiffs actually have the documents Pfizer demanded. Magistrate Judge Brown impermissibly put the burden of showing *non-possession* on the Plaintiffs. Abundant law, in Illinois and in New York, as well as numerous other jurisdictions, puts that burden squarely on Pfizer, the party moving to compel. *See* May 22 Order at 2 ("[I]t was error to relieve Defendant of the burden of showing Plaintiffs' control over the requested documents" (citing cases)). Finally, Judge Darrah correctly concluded that the Magistrate Judge had failed to properly balance relevance against burdensomeness. *See* May 22 Order at 2 ("the burden imposed . . . clearly outweighs the likely benefit of the

---

[3] Plaintiffs filed their Objections to Magistrate Judge Brown's Order Dated December 21, 2007 Granting Pfizer's Motion to Compel on January 15, 2008 (Dkt. No. 196). Plaintiffs filed their Amended Objections to Magistrate Judge Brown's Order Dated November 14, 2007 Denying Plaintiffs' Motion to Modify Discovery on November 29, 2007 (Dk. No. 173).

discovery.  Magistrate Judge Brown's order of November 14, 2007 is set aside. . . . Balancing the burden of producing this information against its relevance, such discovery is not warranted. Therefore the December 21, 2007 order is set aside.")  That failing was particularly crucial, because the Magistrate Judge's discovery Orders would have required Plaintiffs to obtain and analyze thousands of personal medical records from non-litigant private parties, records that would reveal the most private details of these non-parties' medical, sexual and prescription drug histories.

Pfizer's motion asking this Court to reconsider Judge Darrah's well-reasoned and thoroughly considered decision violates principles of finality and judicial efficiency, and, like all reconsideration  motions, must clear an extremely high hurdle.  But Pfizer presents absolutely no valid reason to justify reconsidering Judge Darrah's decision.  Pfizer simply argues that Judge Darrah "got it wrong," but fails to identify a single change in facts or circumstances, any overlooked judicial authority, or any intervening change in the law that might justify a motion for reconsideration.  Very rarely granted, reconsideration motions cannot be used, as Pfizer tries to do here, as a quasi-appeal by a disappointed litigant who does not like a court's ruling.

Judge Darrah issued the May 22 Order less than two months ago.  None of the relevant legal principles, precedents, facts or circumstances have changed since then.  Judge Darrah ignored no controlling precedent, but, rather, applied well-established law in reversing the Magistrate Judge's discovery Orders because they impermissibly inverted the well-established burden of proof and completely ignored the required balancing of the extreme burden of obtaining thousands of confidential medical records from non-parties against whatever minimal relevance such information would serve for Pfizer's defense. As Judge Darrah correctly

observed, "patient-specific information has little relevance to Plaintiffs' claims."  *See* May 22 Order at 2.

No colorable argument exists that the May 22 Order is clearly erroneous or creates a manifest injustice.  Judge Darrah's May 22 Order concerns *discovery*.  Pfizer's motion to dismiss the SAC has been pending since October 4, 2007.  *See* Dkt. No. 153.  Pfizer will re-file that motion in this court by July 24, 2008.  Pfizer claims even deeming all of the Plaintiffs' factual allegations as true, the Plaintiffs fail to state any cognizable legal claim.  If, as Pfizer claims, Plaintiffs have no case at all, the May 22, 2008 Order aligning discovery with the Plaintiffs' actual claims works no "manifest injustice."

Defendant's motion for reconsideration should be denied.

### **BACKGROUND**

#### A.  **Plaintiffs' Claims Against Pfizer**

Plaintiffs, eleven healthcare benefit funds, pay for prescription medications and other medical benefits for their members.  As the SAC details, Plaintiffs allege that Pfizer engaged in an illegal scheme to market its flagship drug, Lipitor® (atorvastatin calcium) ("Lipitor"), by overpromoting Lipitor. *See* SAC ¶¶ 81-110.[4]  Pfizer invented or exaggerated benefits, concealed or misleadingly softpedaled myriad and substantial risks, and promoted Lipitor for uses and patients not indicated on the drug's label.  *See* SAC ¶¶ 81-110.  Plaintiffs allege that had they known the truth about Lipitor's serious side effects, and had they known of Lipitor's potential for over-prescription, Plaintiffs would not have paid the premium price Pfizer charged for the Lipitor that Pfizer hyped as a superior product.  *See* SAC ¶ 98.

---

[4] The SAC was filed under seal.  It is not attached to the Declaration of Mark S. Cheffo in Support of Defendant Pfizer Inc.'s Motion for Reconsideration of the Minute Order of May 22, 2008, and is not attached to this response brief.

Central to Pfizer's pervasive illicit overpromotion was Pfizer's relentless false portrayal of Lipitor as superior to and safer than other statins.  *See* SAC ¶ 88. Pfizer's deceptive marketing caused Plaintiffs and other third party payors ("TPPs") to overpay for each Lipitor prescription purchased during the Class Period (January 1, 2002 through the present).  *See* SAC ¶ 178. Through Pfizer's illegal marketing, gross revenue from Lipitor sales climbed to over $12 billion in 2005, and over $30 billion throughout the Class Period.  *See* SAC ¶ 7.

## B.  Pfizer's Discovery Tactics Are Rejected By The Court

Discovery has been hotly contested, generating at least  11 motions,[5]  five oral arguments[6] and 13 rulings.[7]  These numerous proceedings reveal one constant, overarching theme:  Pfizer's "atomization of the case" strategy.   That strategy includes trying to drag thousands of non-party Lipitor users into the litigation by seeking production of their individual

---

[5] *See* Plaintiffs' Motion to Extend Stay of Discovery, filed January 29, 2008 (Dkt. No. 205); Plaintiffs' Objections to Magistrate Judge Brown's Order Dated December 21, 2007 Granting Pfizer's Motion to Compel, filed January 15, 2008 (Dkt. No. 196);  Plaintiffs' Motion and Incorporated Memorandum of Law for Stay of Magistrate Judge's December 21, 2007 Order, filed January 4, 2008 (Dkt. No. 191); Plaintiffs' Unopposed Motion for Clarification [of discovery order], filed December 19, 2007 (Dkt. No. 182); Parties' Joint Motion for Stay of Magistrate Judge's November 14, 2007 Order, filed December 13, 2007 (Dkt. No. 177); Plaintiffs' Amended Objections to Magistrate Judge Brown's Order Dated November 14, 2007 Denying Plaintiffs' Motion to Modify Discovery, filed November 29, 2007 (Dk. No. 173); Plaintiffs' Motion to Modify Discovery, filed September 10, 2007 (Dkt. No. 136); Pfizer Inc.'s Motion to Compel Plaintiffs to Provide Documents, Unredacted Claims Records, and Responses Concerning Pfizer's Proprietary Materials, filed September 7, 2007 (Dkt. No. 133); Pfizer Inc.'s Motion to Compel the Disclosure of Allegedly Improper Off-Label Lipitor Prescriptions, filed August 6, 2007 (Dkt. No. 101); Pfizer Inc.'s Motion to Compel Plaintiffs to Provide Proper Responses to Interrogatories and Requests for Production of Documents, filed April 30, 2007 (Dkt. No. 77); Plaintiffs' Motion to Compel, filed April 27, 2007 (Dkt. No. 68).

[6] *See* fn. 2, *infra.*

[7] *See* May 22 Order (Dkt. No. 213); Order of February 27, 2008 (Dkt. No. 210) (granting stay of discovery); Order of January 9, 2008 (Dkt. No. 194) (granting stay of discovery); Order of December 21, 2007 (Dkt. No. 186) (denying motion to clarify discovery order); Order of December 21, 2007 (Dkt. Nos. 184, 185) (granting Pfizer's motion to compel); Order of December 14, 2007 (Dkt. No. 180) (staying discovery); Order of November 14, 2007 (Dkt. No. 165) (denying Plaintiffs' Motion to Modify Discovery); Order of August 29, 2007 (Dkt. No. 129) (requiring withdrawing Plaintiff to comply with Pfizer discovery requests); Order of August 28, 2007 (Dkt. No. 115) (granting Pfizer's motion to compel); Order of July 19, 2007 (Dkt. No. 98) (requiring Plaintiffs to obtain and produce off label prescriptions for one fund); Order of June 13, 2007 (Dkt. No. 92) (mooting motions to compel); Order of May 23, 2007 (Dkt. No. 89) (continuing motions to compel).

medical histories. Pfizer seeks a mini-trial on every single one of tens of thousands of Lipitor prescriptions, trying to force the Plaintiffs to demonstrate, for each prescription, every user's personal medical history, including the most sensitive medical, sexual and prescription drug information. Judge Darrah's May 22 Order rebuffed Pfizer's plan to make the case monstrously difficult and unwieldy, reversing the November 14 and December 21 Orders that would have required Plaintiffs to first obtain, and then produce, personal medical information from the individual physicians of the Plaintiffs' non-litigant beneficiaries.

### 1.    The May 22 Order Sets Aside The Magistrate Judge's November 14, 2007 Order

The November 14 Order required Plaintiffs to comply with a discovery order that pre-dated the SAC. [8] The November 14 Order "essentially require[d] Plaintiffs to collect the medical records of every plan participant who was prescribed Lipitor and examine those records to determine whether the prescription was for an off-label use." *See* May 22 Order at 1. Judge Darrah's May 22 Order properly concluded that "patient-specific information has little relevance to Plaintiffs' claims, as revised in the SAC." *Id.* at 2. Judge Darrah further concluded that under Federal Rule of Civil Procedure 26(b)(1), the burden the November 14 Order imposed on Plaintiffs "clearly outweighs the likely benefit of the discovery." *Id.* Judge Darrah was not merely speculating about the burden the November 14 Order imposed. Judge Darrah specifically found that "Plaintiffs have attempted to gather a subset of the requested information; and their efforts have been met with severe difficulties, including unresponsive physicians and participants

---

[8] Plaintiffs' First Amended Complaint ("FAC") alleged that Plaintiffs suffered economic harm by paying for "off-label" Lipitor prescriptions. Under this numerically-based damages theory, damages were the amounts paid for the total of impermissible off-label prescriptions. On August 28, 2007, the Magistrate Judge entered an Order requiring Plaintiffs to respond to a Pfizer interrogatory by identifying each alleged off-label prescription, necessitating a review of patient-specific medical histories. On September 4, 2007, over Pfizer's fierce opposition, after full briefing and oral argument, the Court granted Plaintiffs leave to file the SAC for the express purpose of amending Plaintiffs' theory of damages to a theory based on the allegedly inflated *price* of Lipitor, rather than on the number of off-label prescriptions.

and reluctance on the part of physicians to divulge the contents of their patients' medical records." *Id.*[9] Further, Judge Darrah ruled that in addition to the burden on Plaintiffs, "[t]here is also a significant burden to the participants whose medical records are sought in terms of loss of privacy rights." *Id.*

### 2.    The May 22 Order Sets Aside The Magistrate Judge's December 21, 2007 Order

The December 21 Order compelled Plaintiffs to respond to an interrogatory by identifying individuals who had provided documents to Plaintiffs and to produce documents concerning individual patients' medical histories that were not in Plaintiffs' possession.  The May 22 Order set aside this Order for two reasons.  First, Judge Darrah held that the Magistrate Judge erred "by relieving Defendant of its burden to show Plaintiffs' possession of the documents sought." *Id.*  Second, for the same reasons stated above,  the Court held that "[b]alancing the burden of producing this information against its relevance, such discovery is not warranted." *Id.*

### C.    Pfizer Seeks Reconsideration In The Southern District Of New York

Pfizer waited until the case was transferred here, then sought reconsideration of Judge Darrah's May 22 Order under Local Civil Rule 6.3.  Pfizer also moves under Fed. R. Civ. P. 54(b), which makes interlocutory orders "subject to revision."  As explained below, Pfizer's motion cannot meet the extremely high standard for reconsideration in this Court because Judge Darrah did not overlook any controlling precedent or factual matters.

---

[9] Prior to the SAC's filing, the Magistrate Judge ordered Plaintiffs to select one "test fund" and respond to Pfizer's aforementioned interrogatory as to that fund.  *See* Order of Magistrate Judge Brown dated June 14, 2007 (Dkt. No. 92) (requiring Plaintiffs to identify all allegedly off-label prescriptions paid for by one "test fund" and necessitating requests for personal medical histories for that fund's participants and their physicians).

Further raising the already high reconsideration bar, Pfizer's Rule 54(b) motion is subject to the "law of the case" doctrine. Under that doctrine, well-established in this jurisdiction,[10] transferee courts are "loathe" to reconsider previously litigated issues absent an intervening change in controlling law, newly discovered evidence, or a clear error producing manifest injustice. None of these factors exists here.

## ARGUMENT

### I.    Pfizer Fails to Clear Local Civil Rule 6.3's High Standard

Local Civil Rule 6.3 is to be "strictly applied to avoid repetitive arguments that the Court has already fully considered." *Fezzani v. Bear Stearns & Co.*, No. 99 Civ. 0793, 2004 WL 1781148, at *1 (S.D.N.Y. Aug. 10, 2004). *Anglo Am. Ins. Group, P.L.C. v. Calfed Inc., X.C.F.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996). Accordingly, abundant precedent from this Court teaches that a reconsideration motion cannot be used simply to re-litigate issues previously decided. *See, e.g., Word v. Croce*, No. CIV 6496, 2001 WL 755394, at *3 (S.D.N.Y. July 5, 2001), citing *In re Houbigat, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) (a Local Rule 6.3 motion "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"); *Manko v. Deutsche Bank*, No. 02 CV 10180, 2006 WL 1443200, at *1 (S.D.N.Y. May 25, 2006) (reconsideration under Local Civil Rule 6.3 denied where motion "is merely a rehashing of arguments [the party] previously made."); *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 352 (S.D.N.Y. 2004) (under Local Civil Rule 6.3 "there

---

[10] *See U.S. ex rel Smith v. New York Presbyterian Hosp.*, No. 06 Civ. 4056, 2007 WL 2142312, at *9 (S.D.N.Y. July 18, 2007) ("Under the 'law of the case' doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). *See also Dresser Indus., Inc. v. First Travel Corp.*, Nos. Civ. 88-581E, 90-470E, 1990 WL 159037, at *3 (W.D.N.Y. Oct. 11, 1990) (once a ruling becomes law of the case "[a] disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances.") (quoting *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 168-169 (3d Cir. 1982)).

simply is no excuse for allowing plaintiffs to have a second bite at the apple, let alone a bite that would swallow the entire orchard"); *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487, 2004 WL 1403297, at *2 (S.D.N.Y. June 22, 2004) ("A motion for reconsideration is not, however, a 'second bite at the apple' for a party dissatisfied with a court's ruling.").

Similarly, motions for reconsideration cannot "substitute for an appeal." *Hammer v. First*, *UNUM Life Ins. Co.*, No. 01 Civ. 9307, 2005 WL 525445, at *2 (S.D.N.Y. Mar. 7, 2005) quoting *Fezzani*, 2004 WL 1781148, at *1.

A motion for reconsideration is not available for argument that the court just "got it wrong." That is the appeal standard. In *Thomas v. iStar Fin., Inc.*, 520 F. Supp. 2d 478, 480-482 (S.D.N.Y. 2007), for example, the movant argued that the court employed improper standards in reviewing a jury's punitive damages award. Denying the motion, the Court ruled that the movant "[did] not identify controlling principles the Court overlooked that would alter the outcome," but rather "[took] issue with the Court's reading and application of the principles the Court found most compelling." *Id.* at 481. Therefore, the Court ruled, the "proper vehicle to challenge such a ruling is not a motion for reconsideration, but an appeal from a final judgment." *Id.*

Just like the movant in *Thomas*, Pfizer simply "takes issue" with the application of the black letter principles Judge Darrah found compelling and impermissibly seeks to use its reconsideration motion as an appeal from a final judgment. But this district's law is clear. Reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *WTC Captive Ins. Co, Inc. v. Liberty Mutual Fire Ins. Co.*, 537 F. Supp. 2d 619, 623-624 (S.D.N.Y. 2008). A reconsideration motion under Local Civil Rule 6.3 "is appropriate *only* where the court has 'overlooked controlling decisions

or factual matters put before it on the underlying motion.'" *Manko*, 2006 WL 1443200, at *1 (emphasis supplied) (citations omitted); *WTC Captive Ins. Co.* 537 F. Supp. 2d at 623 (while reconsideration may be granted to correct clear error, prevent manifest injustice or consider newly-available evidence, "[t]he criteria are 'strict'; reconsideration generally is denied unless the moving party can point to 'controlling decisions or data that the court overlooked'"). Judge Darrah overlooked no controlling decisions or facts.

### A.    Judge Darrah Did Not Overlook Any Controlling Decisions Put Before Him

Judge Darrah did not "overlook" any controlling legal decision put before him. Federal Rule of Civil Procedure 34 only requires a party to produce documents in its "possession, custody or control." Judge Darrah properly ruled that the Magistrate Judge had ignored the rule that *Pfizer* bore the burden of demonstrating that Plaintiffs had control of the documents Pfizer sought from non-party physicians and patients. *See, e.g., Kestner v. Pratt & Whitney Canada, Inc.*, No. 94-3176, 1995 WL 598995, at * 2 (E.D.Pa. Oct. 6, 1995) (denying motion to compel production under Rule 34 where responding party denied having possession of computer disk and requesting party produced no evidence to the contrary).

Judge Darrah also ruled, again correctly, that a court must balance the burden of the discovery requests against the value of the information sought. *See, e.g., Halder v. Intern. Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977) (where responding to discovery would impose a substantial burden it is "necessary to balance the burden . . . against the value of the [discovery]") (citations omitted). It was well within Judge Darrah's discretion to conclude, as he did, that this requisite balancing required denial of Pfizer's motion to compel. *See Halder*, 75 F.R.D. at 658 ("it is evident that the effort which would be required to gather and assimilate the

information plaintiff requests far outweighs the limited probative value this information would have on his case").[11]

Pfizer argues that Judge Darrah disregarded *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d. Cir. 2008), *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004), and Federal Rule of Civil Procedure 26(b)(2)(C)(iii), which requires courts to consider various factors when weighing the burden of discovery. *See* Pfizer Br. at 3, 4, 17-19, 21. Pfizer is wrong. Neither of these cases, nor Rule 26, mandates reversal of Judge Darrah's holding that the Magistrate Judge impermissibly removed from Pfizer the burden of showing that Plaintiffs had control over the requested documents, and that, in any event, the burden of production on Plaintiffs "clearly outweighs the likely benefit of any discovery." May 22 Order at 2.

In *McLaughlin*, the Second Circuit decertified a class of consumers of "light" cigarettes for failure to meet the class action commonality requirement, ruling that "each plaintiff in this case could have elected to purchase light cigarettes for any number of reasons." *McLaughlin*, 522 F.3d at 225. *McLaughlin*, a class certification decision, is not "controlling" on the issues of whether the individual medical histories Pfizer seeks are relevant to the SAC's claims and whether the burden of producing these histories outweighs any probative value. Moreover,

---

[11] Complying with the discovery orders at issue would also improperly require Plaintiffs to *create* information from sources outside of their care, custody or control. As the "test" fund experience illustrated, many documents supposedly responsive to Pfizer's requests must be obtained from third parties. Any documents relating to off-label uses of Lipitor must be created after participant records are gathered from those participants' physicians who are willing to provide medical records to Plaintiffs. In order to identify off-label prescriptions for the "test fund," Plaintiffs needed to request participant medical records from participants' physicians, have those records analyzed by Plaintiffs' experts and only then were Plaintiffs able to create a list of off-label prescriptions. *See Rockwell Intern. Corp. v. H. Wolfe Iron and Metal Co.*, 576 F. Supp. 511, 513 (D.C. Pa. 1983) (a party "cannot be compelled [under Rule 34] to create, upon the request of . . . [an opponent], documentary evidence which is not already in existence in some form"); *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("Of course, '[i]f a document or thing does not exist, it cannot be in the possession, custody, or control of a party and therefore cannot be produced for inspection.'" (quoting 10A Federal Procedure, Law Ed. § 26:381, pp. 52-53 (1988)). A list identifying all off-label prescriptions of Lipitor reimbursed by Plaintiffs simply does not exist in any form.

Plaintiffs here are not individuals, but healthcare benefit funds that make purchase and payment decisions based, among other things, on a drug's supposed efficacy, safety and cost. Pfizer may make *McLaughlin*-type arguments when this case reaches the class certification stage. But *McLaughlin* is not a controlling decision that entitles Pfizer to harassing and burdensome discovery of individual non-parties and their medical histories. Judge Darrah no doubt realized this. Pfizer submitted a two page single-spaced letter brief concerning *McLaughlin* (attached hereto as Exhibit A) and Plaintiffs submitted a thorough response (attached hereto as Exhibit B). Well-briefed on *McLaughlin,* Judge Darrah understood that *McLaughlin* did not dictate the conclusions Pfizer seeks.[12]

Finally, to the extent *McLaughlin* has any relation to the substantive issues in this case, the purpose for which Pfizer cites *McLaughlin* is undercut by the U.S. Supreme Court's recent decision in *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131 (2008). Pfizer relies on *McLaughlin* for the premise that discovery of individual Lipitor users is necessary to Pfizer's arguments about Plaintiffs' reliance and damages. *See* Pfizer Br. at 17 ("the [*McLaughlin*] court repeatedly emphasized that evidence of which, if any, marketing statements each plaintiff saw and relied upon, and each plaintiff's actual out-of-pocket damages, would be critical to their claims, and defendants' defenses under RICO") (emphasis omitted). In *Bridge*, however, the U.S. Supreme Court ruled that a civil RICO claim based on wire and mail fraud, like Plaintiffs' RICO claim (*see* SAC ¶¶ 193-216), need *not* establish first-party reliance. *Bridge*, 128 S. Ct. at 2138-2145. As for Pfizer's need for discovery of individual Lipitor users to rebut Plaintiffs' damages claim, the Plaintiffs here are insurers who paid an inflated price for Lipitor, not the patients who actually consumed the drug. Plaintiffs' will present evidence as to their economic

---

[12] Pfizer's motion fails to inform the Court about these detailed letter briefs addressing legal issues Pfizer claims Judge Darrah overlooked.

losses at the appropriate time.  The medical histories of individual Lipitor users will have no bearing on Plaintiffs' damages.

Arguing that Judge Darrah either "overlooked or misapprehended" Plaintiffs' ability to obtain information from individual non-party Lipitor users, Pfizer cites *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004).  Pfizer Br. at 3; *see also* Pfizer Br. at 21 (arguing that under *Ashcroft*, the Health Insurance Portability and Accountability Act of 1996 ("HIPPA") permits disclosure of relevant medical records where parties have a protective order); Pfizer Br. at 25 ("[t]he District Court similarly disregarded authority – namely *Ashcroft* . . ."). First, *Ashcroft* was in front of Judge Darrah; Pfizer argued the case in its brief to Judge Darrah.[13] Second, *Ashcroft* is distinguishable on its facts, and, to the extent it applies blackletter discovery law, supports Judge Darrah's ruling.

In *Ashcroft*, a hospital challenged a Department of Justice subpoena seeking individual medical records for patients who had undergone late-term abortions.  *Ashcroft*, 362 F.3d at 924. The district court quashed the subpoena on grounds that HIPPA permitted Illinois to give its medical patients additional privacy rights, beyond HIPAA's.  *Id*. at 925.  The Seventh Circuit ruled that "[a]lthough the issue is not free from doubt," HIPPA did not require the Illinois provision to be applied in a federal question lawsuit.  *Id*.[14]  Nevertheless, the Seventh Circuit upheld the district court's quashing of the subpoena, ruling that the burden of compliance outweighed any probative value of the individual medical records.  *Id*. at 927.  The Seventh

---

[13] *See* Pfizer Opposition to Plaintiffs' Amended Objections to Magistrate Judge Brown's Order Dated November 14, 2007 Denying Plaintiffs' Motion to Modify Discovery, filed December 17, 2007 at 13 (Dkt. No. 181).

[14] To the extent that any state laws providing individual privacy protection beyond HIPPA can be applied, without compromising federal policy, *Ashcroft* instructs courts should do so.  *Ashcroft*, 362 F.3d at 932 ("comity 'impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy'") (internal quotation and citations omitted).

Circuit explained that the burden of compliance involved both an administrative hardship in obtaining the records, which the court described as "modest," and a hardship based on the sensitivity of the individual medical records, even if the patients' names were redacted. *Id.* at 928-929.

*Ashcroft* may offer insight into whether medical records may be obtained under HIPPA. But *Ashcroft* confirms that even where obtaining records is possible and a protective order is in place, a court may deny discovery where the burden of production outweighs the probative value of the materials. That is exactly what Judge Darrah did here. Judge Darrah had even more reason to deny discovery than the court in *Ashcroft* because the administrative burden in gathering the materials requested here is more than "modest." As Judge Darrah explained in detail, Plaintiffs' efforts to gather a subset of the information Pfizer requested was "met with severe difficulties, including unresponsive physicians and participants and reluctance on the part of physicians to divulge the contents of their patients' medical records." May 22 Order at 2. *Ashcroft* provides no basis for reconsidering Judge Darrah's ruling.

Finally, Pfizer argues that "Judge Darrah overlooked the mandate of Rule 26(b)(2)(C)(iii) to consider multiple factors in determining whether the burden of discovery is undue, including 'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues'" Pfizer Br. at 21, quoting Rule 26(b)(2)(C)(iii). To the contrary, Judge Darrah, who was fully familiar with the parties' different views of permissible discovery, cites Rule 26(b)(2) before his discussion of the burden of discovery outweighing any likely benefit. *See* May 22 Order at 2. Judge Darrah explained accurately that Plaintiffs' prior attempts to comply with

---

"The fact that quashing the subpoena comports with Illinois' medical-records privilege is a final factor in favor of the district court's action." *Id.*

Pfizer's discovery requests were met with "severe difficulties" and that based on the SAC, the operative complaint in a case over which Judge Darrah had been presiding for two-plus years, "patient specific information has little relevance to Plaintiffs' claims."  May 22 Order at 2.

Pfizer views the language of Rule 26(b)(2)(C)(iii) as a limiting checklist, and that the May 22 Order should be stricken because Judge Darrah never commented on "the amount in controversy" or Pfizer's claim that Plaintiffs have "significant resources."  Pfizer Br. at 22. Wrong.  First, Rule 26(b)(2)(C)(iii) is to be interpreted broadly, not narrowly, so as to give the court wide discretion in deciding discovery matters such as this.  *See, e.g., Surles ex rel Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305-306 (6th Cir. 2007) (affirming district court limitation on discovery on grounds of relevance and undue burden, and explaining that the history of Rule 26(b)(2)(C)(iii) demonstrates an effort "to afford district courts greater discretion in restricting the scope of discovery").  Second, Judge Darrah's discussion of Plaintiffs' prior attempts to obtain patient-specific information and the "severe difficulties" Plaintiffs encountered *is* an analysis of Plaintiffs' resources, reflecting Judge Darrah's judgment as to whether Plaintiffs have the ability to obtain the information Pfizer seeks.

A close reading of Pfizer's argument is revealing.  Pfizer claims that "[w]hen the factors set forth under Rule 26(b) are evaluated against the claimed burden, as required by the Rule, it is Judge Darrah's perfunctory ruling, not Judge Brown's reasoned analysis, that must be set aside as erroneous."  Pfizer Br. at 22.  Pfizer wants this Court to "re-balance" the factors and decide against Judge Darrah.  This is not the standard for reconsideration.

### B.    Judge Darrah Did Not Overlook Any Factual Matters Put Before Him

Judge Darrah did not overlook any factual matters the parties put before him.   All relevant factual matters were squarely before the Court in extensive and repeated briefing.

Plaintiffs submitted written objections to the November 14 Order to Judge Darrah (Dk. No. 173). Pfizer responded (Dk. No. 181) and Plaintiffs replied (Dk. No. 188). Plaintiffs also submitted written objections to the December 21 Order to Judge Darrah (Dk. No. 196). Pfizer responded (Dk. No. 202) and again Plaintiffs replied (Dk. No. 204). Plaintiffs submitted over 300 pages of exhibits to these objections, including eleven affidavits. Each from a different Plaintiff fund, these affidavits described the actual review each Plaintiff conducted in order to produce documents responsive to Pfizer's discovery requests. *See* Dk. No. 196, Exs. D1-D11. These affidavits explained the nature of each Plaintiff's operations and recordkeeping, and explained which documents each Plaintiff possessed and which it did not possess or control. *Id*. The affidavits demonstrate that none of the Plaintiffs possess or control medical records for individual Lipitor users. *Id*.

Plaintiffs also offered in open court to provide the Magistrate Judge with affidavits concerning the extreme burden of obtaining and producing these documents that are out of Plaintiffs' control. *See* Sept. 26, 2007 hearing Tr. (Dk. No. 193) at 20 ("we'd be happy to provide an affidavit if that's necessary"). The Magistrate Judge never requested these affidavits, and instead ruled on Pfizer's motion to compel. Nevertheless, both the Magistrate Judge and Judge Darrah were well aware of Plaintiffs' efforts to obtain patient-specific information from the one "test fund" as the Magistrate Judge ordered. Plaintiffs' counsel described in open court the extreme difficulty in obtaining information from individual Lipitor users and their physicians.[15]

---

[15] *See, e.g.,* Hearing Tr. from September 26, 2007 hearing before Magistrate Judge Brown (Dkt. No. 193) at 18 ("Your Honor said that Rule 11(b) governs attorneys' representations to the court. I've made representations to this Court about the difficulty and burdensomeness of getting these nonparty documents. I stand by those.").

Despite the voluminous record before Judge Darrah, Pfizer argues that Judge Darrah "overlooked or misapprehended" the "lack of evidence of any burden other than the obligations of Plaintiffs' counsel to collect and review certain documents." Pfizer Br. at 3-4. Pfizer also argues that Judge Darrah "overlooked the facts" that Plaintiffs were able to obtain some information from individual physicians and patients on behalf of the "test fund" and that Plaintiffs and Pfizer worked out an "agreed letter" that Plaintiffs could send to individual physicians requesting medical histories for their Lipitor-using patients. Pfizer Br. at 20.

Judge Darrah "overlooked" no such "facts" at all, but rather was intimately familiar with each of Pfizer's complaints by virtue of his extensive involvement with this litigation and the repeated discovery disputes it generated in the over two years the case was pending before him. Judge Darrah was well aware that Plaintiffs had contacted individual physicians and sought personal medical histories from individual Lipitor users in an attempt to comply with the Magistrate Judge's ruling that Plaintiffs provide this information for one "test fund." Indeed, Judge Darrah commented in the May 22 Order that "Plaintiffs have attempted to gather a subset of the requested information" and that "their efforts have been met with severe difficulties, including unresponsive physicians and participants and reluctance on the part of physicians to divulge the contents of their patients' medical records." May 22 Order at 2. Judge Darrah was also aware, because he was presiding over the case, that after Pfizer questioned the language of the form letter Plaintiffs had been sending to individual physicians, Plaintiffs and Pfizer conferred regarding an "agreed letter." Judge Darrah knows these facts. Pfizer's attempt to cherry-pick a few facts and claim that Judge Darrah must have overlooked them is nothing more than Pfizer's desire for an improper "'second bite at the apple' for a party dissatisfied with a court's ruling." *Tellium*, 2004 WL 1403297 at *2.

## II.     <u>Pfizer's Motion Fails Under The Law Of The Case Doctrine</u>

Pfizer invokes Rule 54(b), which subjects Pfizer's motion "to the law of the case doctrine." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 349 (S.D.N.Y. 2004). "[A] court's re-consideration of a matter deemed 'law of the case' is 'extremely deferential.'" *U.S. ex rel Smith v. New York Presbyterian Hosp.*, No. 06-Civ. 4056, 2007 WL 2142312, at *9 (S.D.N.Y. July 18, 2007) (quoting *In re Air Crash at Belle Harbor*, MDL No. 1448, 2003WL 124677, at *2 (S.D.N.Y. Jan. 15 2003), in turn citing *Washington Nat. Life Ins. Co. of New York v. Morgan Stanley & Co., Inc.*, 974 F. Supp. 214, 218-219 (S.D.N.Y. 1997)). "[C]ourts should be 'loathe' to revisit a previously decided issue except in rare circumstances, 'such as when the initial decision was clearly erroneous and would work a manifest injustice.'" *Id*. at *9 n.52. (citations omitted).

Particularly instructive, *U.S. ex rel Smith* involved a motion for reconsideration after a case had been transferred to this Court from the District of Connecticut.  The Court stated that "[w]hen a case has been transferred from one district to another, the [law of the case] doctrine 'counsel[s] against the transferee court reevaluating the rulings of the transferor court' unless the governing law has been changed by an intervening decision of a superior court, new evidence has become available, a clear error has been made or reversal is necessary to prevent 'manifest injustice'" *U.S. ex rel Smith*, 2007 WL 2142312, at *9, citing *Hill Dermaceuticals, Inc. v. Galderman*, No. 03 Civ. 2509, 2003 WL 21146634, at *1 (S.D.N.Y. May 15, 2003) (additional citations omitted); *see also In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. at 349-350 (applying same standard where motion for reconsideration affected by law of the case doctrine and quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (additional citations omitted)).

A.     <u>No Intervening Decision Of A Superior Court Exists</u>

Pfizer cites no intervening decision of any superior court that makes Judge Darrah's ruling incorrect as a matter of law. As discussed in section I-A, *infra.*, *McLaughlin* is not an intervening decision. *McLaughlin* was decided before the May 22 Order. Both parties submitted detailed letter briefs to Judge Darrah analyzing *McLaughlin* and its application to this case. *McLaughlin* is a class certification decision that does not address any of the well-established discovery principles on which the May 22 Order is correctly based. As also discussed *infra*, the U.S. Supreme Court's intervening decision in *Bridge v. Phoenix Bond & Indem. Co.* limits any significance *McLaughlin* might have by holding that first-party reliance is simply not a required element of a civil RICO claim based on wire and mail fraud. Pfizer's purported desire to use discovery to disprove Plaintiffs' RICO claim reliance is largely moot. *Bridge*, 128 S. Ct. at 2138-2145.

Nor is *Ashcroft* an intervening decision. *Ashcroft*, too, was decided before the May 22 Order. Pfizer discussed *Ashcroft* in its brief to Judge Darrah. *See* fn. 8, *infra.* As discussed above, *Ashcroft* supports Judge Darrah's decision to limit discovery where the burden of production outweighs the probative value of the information.

Pfizer cites no decision, from this or any court, handed down after the May 22 Order. No intervening decision by any court, much less a "superior court," requires reconsideration of the May 22 Order. *Cf. Simoiu v. U.S. Marshals Serv.*, No. 00 Civ. 7133, 2005 WL 646099, at *3 (S.D.N.Y. Mar. 18, 2005) (granting reconsideration of order from transferor court where Second Circuit decision made *after* the order to be reconsidered ruled "conclusively" on a controlling matter of law).

Not only has no intervening decision by a superior court issued affecting Judge Darrah's decision, but the black letter discovery principles on which Judge Darrah relied are the same in this district as in the Northern District of Illinois.  Just as in Illinois, in this district "[a] party seeking the production of documents bears the burden of establishing the opposing party's control over those documents."  *Florentia Contracting Corp. v. The Resolution Trust Co.*, No. 92 Civ. 1188, 1993 WL 127187, at *3 (S.D.N.Y. Apr. 22, 1993) (citations omitted). Just as in Illinois, courts in this district must limit discovery where the burden of production outweighs the probative value of the information sought.  *See, e.g.,* Fed. R. Civ. P. 26(b); *Johnson Matthey, Inc. v. Research Corp.*, No. 01-cv-8115, 2003 WL 24136087, at *4 (S.D.N.Y. June 16, 2003) (limiting document discovery because "Rule 26 nevertheless requires a court to balance the probative value of proposed discovery against its potential burden").  Judge Darrah's action would be just as legally sound and factually correct in this district as it was in the Northern District of Illinois.

### B.    Pfizer Offers No New Evidence

Pfizer cites no "new evidence" that was not available to Judge Darrah.  Pfizer merely restates select facts that were already before Judge Darrah and then conclusorily argues that Judge Darrah must have "overlooked" these facts.  *See* Section I-B, *infra*.  This does not satisfy this jurisdiction's rule that a transferee court should not review the rulings of a transferor court based on issues of fact unless "new evidence has become available."  *U.S. ex rel Smith*, 2007 WL 2142312 at *9 (citations omitted).

### C.    No Clear Error Creates Any Manifest Injustice

Judge Darrah committed no error, much less a "clear error" resulting in a "manifest injustice."  The Magistrate Judge ordered Plaintiffs to obtain and produce individual medical

records that Plaintiffs neither possessed nor controlled, from non-party Lipitor users and their physicians, because Plaintiffs had not demonstrated that it would be "impossible" to produce this information. Judge Darrah correctly ruled that the Magistrate Judge had erred in failing to apply the well-established rule that it was Pfizer's burden to establish that Plaintiffs had control over the documents Pfizer sought. *See Sparks Tune-Up Centers, Inc. v. Pancherve*, No. 90 C 4369, 1991 WL 101667, at *3 (N.D. Ill. June 4, 1991) ("the party which brings the motion to compel has the burden of establishing that the non-movant has control of the requested documents" (citing *Norman v. Young*, 422 F.2d 470, 473 (10th Cir. 1970)); *Technical Concepts, L.P. v. Continental Mfg. Co.*, No. 92 C 7476, 1994 WL 262119, at *1 (N.D. Ill. June 10, 1994) ("The burden of showing that a party is in control of requested documents falls upon the party which brings the motion to compel"). Judge Darrah, a highly experienced and respected trial judge, was obliged to, and did, balance Plaintiffs' burden in obtaining and producing individual medical histories against the probative value of the information in a case Judge Darrah had handled for over two years. Judge Darrah had all relevant facts before him and engaged in the proper analysis.

Pfizer's real argument is not that Judge Darrah did anything wrong, much less committed "clear error." Rather, Pfizer just does not like the result of Judge Darrah's balancing. But Pfizer's displeasure with a properly grounded ruling does not provide the required basis for reconsideration of Judge Darrah's May 22 Order.

## <u>CONCLUSION</u>

For the foregoing reasons, Pfizer's Motion to for Reconsideration of the Minute Order of May 22, 2008 should be denied.

DATED:  July 16, 2008

Respectfully submitted,

<u>/s/ Jay W. Eisenhofer [JE 5503]</u>
GRANT & EISENHOFER P.A.
Michael J. Barry
Stephen G. Grygiel
485 Lexington Avenue
29th Floor
New York, New York 10017
Tel:  (646) 722-8500
Fax:  (646) 722-8502

- and –

Stephen G. Grygiel
Michael J. Barry
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware  19801
Tel:  (302) 622-7000
Fax:  (302) 622-7100

*Lead Counsel for Plaintiffs and Proposed Lead Counsel for the Class*

# Exhibit A

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

333 WEST WACKER DRIVE

CHICAGO, ILLINOIS 60606-1285

DIRECT DIAL
(312) 407-0522
DIRECT FAX
(312) 407-8503
EMAIL ADDRESS
ECRANE@SKADDEN.COM

TEL (312) 407-0700
FAX (312) 407-0411
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

## VIA HAND DELIVERY

April 8, 2008

The Honorable John W. Darrah
United States District Court
Northern District of Illinois
Everett McKinley Dirksen Building
Chambers, Room Number 1288
219 South Dearborn Street
Chicago, Illinois 60604

Re:    Southern Illinois Laborers et al. v. Pfizer Inc,
       N.D Ill., C.A. No. 06-CV-1818

Dear Judge Darrah:

I write to bring to the Court's attention a recent decision by the Second Circuit Court of Appeals, *McLaughlin v Philip Morris USA, Inc.*, --- F.3d ---, 2008 WL 878627 (2d Cir. Apr. 3, 2008), that bears upon Plaintiffs' pending objections to Judge Brown's two discovery orders in this case. The decision is especially pertinent in light of Plaintiffs' consent to a transfer of this action to the Southern District of New York.

In *McLaughlin*, plaintiffs seeking to represent a nationwide RICO class of cigarette purchasers claimed that defendants' alleged deceptive marketing of "light" cigarettes as a healthier alternative to regular cigarettes "led them to buy Lights in greater quantity than they otherwise would have and at an artificially high price." 2008 WL 878627, at *1. Similarly, here, Plaintiffs seek to represent a nationwide RICO class and allege that "[a]s a result of Pfizer's illegal, false and misleading marketing and promotion of Lipitor, Plaintiffs paid improperly inflated prices for Lipitor and for an increased number of Lipitor prescriptions." Second Amended Compl., ¶ 5. Judge Brown ordered Plaintiffs to produce prescription-specific information and many other types of documents, which bear upon individual issues of reliance and injury, yet Plaintiffs have objected on grounds that such information is irrelevant.

The decision in *McLaughlin* provides additional, and compelling, support for Judge Brown's rulings. The Second Circuit recognized that the type of discovery Plaintiffs have failed and refused to produce, and that Judge Brown has twice directed them to provide, is, in fact, essential to Plaintiffs' claims, and as such, unquestionably relevant and discoverable. The Second Circuit held that the class certified by Judge Jack B. Weinstein could not be maintained under Rule 23(b)(3) of the Federal Rules because individual issues of reliance and injury – two essential elements of plaintiffs' RICO claims – outweighed issues susceptible to common proof. *See McLaughlin*, 2008 WL 878627, at *1, 14. In particular, the court repeatedly emphasized that evidence of which, if any, marketing statements each plaintiff saw and relied upon, and each plaintiff's actual out-of-pocket damages, would be critical to their claims, and defendants' defenses, under RICO. The court noted, for example, that "[i]ndividualized proof" of reliance would be

> needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative – for example, if a Lights smoker was unaware of that representation, preferred the taste of Lights, or chose Lights as an expression of personal style.

*Id.* at *4 Similarly, with regard to plaintiffs' price inflation theory of economic loss, it found that "establishing the first link in the causal chain – that defendants' misrepresentation caused an increase in market demand – would require individualized proof, as any number of other factors could have led to this increase." *Id.* at *6.

Thus, the Second Circuit's decision confirms that information about individual issues of causation, reliance, and injury – such as the Plaintiff-specific and prescription-specific information that Judge Brown has directed Plaintiffs to produce – is plainly relevant to, and critical to the resolution of, Plaintiffs' claims.

Accordingly, we respectfully submit that the Second Circuit's decision further supports denial of Plaintiffs' objections to Judge Brown's discovery orders.

Respectfully,

*Edward M. Crane*

Edward M. Crane

cc:   Stephen G. Grygiel, Esq.
      George S. Bellas, Esq.

# Exhibit B



**Grant & Eisenhofer P.A.**

485 Lexington Avenue
New York, NY 10017
Tel: 646-722-8500 • Fax: 646-722-8501

Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801
Tel: 302-622-7000 • Fax: 302-622-7100

www.gelaw.com

1920 L Street, N.W., Suite 400
Washington, DC 20036
Tel: 202-783-6091 • Fax: 202-350-5908

Direct Dial: 302-622-7141
Email: sgrygiel@gelaw.com

April 18, 2008

**VIA HAND DELIVERY**

The Honorable John W. Darrah
c/o Melanie Foster, Courtroom Deputy
U.S. District Court - Northern District of Illinois
Everett McKinley Dirksen Building
219 S. Dearborn Street, Room No. 1288
Chicago, IL 60604

> **Re:    Southern Illinois Laborers' & Employers' Health & Welfare Fund, et al. v.**
> **Pfizer, Inc. - C.A. No. 06-CV-1818**

Dear Judge Darrah,

Plaintiffs write in response to Defendant Pfizer Inc's ("Pfizer" or the "Company") April 8, 2008 submission of the Second Circuit Court of Appeals' decision in *McLaughlin v. American Tobacco Co.*, --- F.3d ----, 2008 WL 878627 (2d Cir. April 3, 2008).

Defendants claim *McLaughlin* bears directly upon the issues in Plaintiffs' outstanding Objections to Magistrate Judge Brown's discovery orders (the "orders") dated November 14, 2007 and December 21, 2007. They are incorrect – the decision has no relevance to Magistrate Judge Brown's orders. Those orders require Plaintiffs to provide Defendant with individual members' confidential medical records, even though Pfizer has not shown that the requested documents are in Plaintiffs' possession, custody or control.

1.    ***McLaughlin* Does Not and Cannot Remedy the Magistrate Judge's Legal Errors.** Fundamentally, *McLaughlin* does nothing to remedy the legal error requiring reversal of the Magistrate Judge's orders. The Magistrate Judge impermissibly lifted from Pfizer its burden of demonstrating that the Plaintiffs have care, custody or control of the medical records and information at issue. *See, e.g.,* Plaintiffs' Amended Objections to Magistrate Brown's Order Dated November 14, 2007 Denying Plaintiffs' Motion to Modify Discovery [Inst. No. 173] at 6-7 ("Objection to November 14th Order"); Plaintiffs' Objections to Magistrate Judge Brown's

The Honorable John W. Darrah
Page 2

Order Dated December 21, 2007 Granting Pfizer's Motion to Compel [Inst. No. 196] at 7-11 ("Objection to December 21st Order"). Further, the Magistrate Judge's orders would compel the Plaintiffs to *create* information, rather than to produce relevant information. *See* Objection to November 14th Order at 3. Finally, even if the requested medical records and other information were relevant, the Magistrate Judge failed to perform the required balancing of the necessity of the information in the context of the case against the hardship to Plaintiffs of producing information they neither have nor control. *See* Objection to November 14th Order at 9-15; Objection to December 21st Order at 11-15. *McLaughlin* does not even discuss these issues.

    **2.    *McLaughlin* Does Not Provide the Proper RICO Causation and Reliance Analysis for Plaintiffs' Third-Party Payor Cost Recovery Case.** In *McLaughlin*, the Second Circuit decertified a class consisting of individual smokers of "light" cigarettes asserting RICO claims. *McLaughlin*, 2008 WL 878627, at *1. The *McLaughlin* plaintiffs claimed injuries arising from the defendant's deception that induced the plaintiffs to buy "light" cigarettes under the false assumption that "light" cigarettes were healthier than regular or "full flavored" cigarettes. *Id.*

    In decertifying the class, *McLaughlin* reasoned that plaintiffs could not meet Rule 23's commonality requirement. *Id.* at *2. Specifically, the court noted that the reasons why individual smokers decided to purchase "light" cigarettes, as opposed to "full flavored" cigarettes, could not be satisfied by class-wide proof or statistical analysis. *See id.* at *5 n.6. According to the court, "each plaintiff in this case could have elected to purchase light cigarettes for any number of reasons, including a preference for the taste and a feeling that smoking Lights was 'cool.'" *Id.* at *5.

    In *McLaughlin*, the interjection of individual smokers' decisions to purchase light cigarettes was dispositive in the court's analysis of class certification for the RICO claims. Here, class certification is not yet ripe. Moreover, unlike *McLaughlin*, Plaintiffs are not individuals but third party-payors ("TPPs"). TPPs, unlike individual beneficiaries and unlike the smokers in *McLaughlin*, make purchase and payment decisions based on a drug's supposed efficacy, safety and cost-efficiency. As detailed in Plaintiffs' Objections, Plaintiffs' theory of liability and damages is predicated on Pfizer's scheme falsely to position Lipitor as a superior drug to other statins in order to command a higher price and extract higher payments from Plaintiffs and other TPPs. Unlike *McLaughlin*, in the instant case individual TPP beneficiary issues of choice are, for present purposes, irrelevant.

    Unlike *McLaughlin*, here the TPP plaintiffs' formulary placement, purchase and payment decisions neither require nor are susceptible to the individualization on which *McLaughlin* turned. *In re Lupron*, 295 F. Supp. 2d 148 (D. Mass. 2003), supplies the correct RICO proximate cause analysis. *Lupron* involved claims by "cancer patients and health care plans" that three pharmaceutical company defendants violated RICO by "conspiring to artificially inflate the price of the drug Lupron." *Id.* at 158. Following the drug maker defendant playbook, the *Lupron* defendants sought, just as Pfizer does here, to conjure up all kinds of breaks in the proximate cause chain. In *Lupron*, the defendants argued that no proximate cause existed between the publication of inflated average wholesale prices based on defendants' fraud and the plaintiffs' damages. Unsurprisingly, the *Lupron* defendants pointed to the supposedly intervening

The Honorable John W. Darrah
Page 3

decisions of prescribing doctors, of the publishers of the journals containing the falsely inflated prices, and even the government, "which through Medicare, set the reimbursement rate for Lupron." *Id.* at 175.

The *Lupron* court demolished the defendants' "no proximate cause" argument. First, the court said, that argument "borders on the frivolous" because it "ignores…the corollary requirement that the intervening act be unforeseeable and completely independent of any act undertaken by the original actor." *Id.* The court acknowledged that "RICO requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* at 175 (quoting *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). But the *Lupron* court refused to require a blind directness for proximate cause that would endorse Pfizer's "break the case into a thousand little pieces" approach:

> A proximate cause need not be a precipitating or 'but for' cause, in the sense of being the last cause in a chain of events leading to the harm, but need only be a substantial cause of a succession of events that in a logical sequence ultimately causes a plaintiff injury. Here it was defendants who instigated both the culpable and the innocent intermediaries to commit acts that were not only foreseeable but intended.

*Lupron*, 295 F. Supp. 2d at 175.

Just as in *Lupron* (*id.* at 166), Pfizer's overpromotion was based on Pfizer's plan to deceive not only TPPs but the prescribing doctors, who were not only foreseeable but perfectly foreseeable actors in the proximate cause chain. No legitimate individualized issues of proximate cause exist to require production of thousands of documents Plaintiffs neither possess nor control, for purposes of the RICO proximate cause issue *McLaughlin* presents in the different context of individual plaintiffs. Besides, as the *Lupron* court stated: "Nothing in the mail and wire fraud statutes requires that the party deprived of money or property be the same party who is actually deceived." *Lupron*, 295 F. Supp. 2d at 168.

Further contradicting Pfizer's unjustifiably fragmented view of RICO causation and its supposed individualized reliance inquiries requiring onerous individualized discovery, the *Lupron* court emphasized that the First Circuit had rejected "the argument that the common-law requirement of detrimental (justifiable) reliance is an element of a civil RICO case premised on fraud…" *Id.* at 175. The reason: "There is…no element of reliance, reasonable or not, contained in the mail and wire fraud statutes." *Id.* at 166, citing *Systems Mg't. Inc. v. Loiselle*, 303 F.3d 100, 104 (1st Cir. 2002).

**3.    *McLaughlin* Did Not Rule Out All Financial Fraud Class Actions.** *McLaughlin* itself noted a distinction between proving reliance for predominately financial and predominately consumer transactions. *See McLaughlin*, 2008 WL 878627, at *5 n.7 ("payment may constitute circumstantial proof of reliance upon a financial representation. . . . [A] financial transaction does not usually implicate the same type or degree of personal idiosyncratic choice as does a consumer purchase"). *McLaughlin* also refused to adopt a rule prohibiting any fraud action from proceeding as a class action. *See id.* at *5 ("We need not go so far as to adopt the

The Honorable John W. Darrah
Page 4

Fifth Circuit's blanket rule that 'a fraud class action cannot be certified when individual reliance will be an issue,' . . . as some fraud actions do appear within the contemplation of Rule 23's drafters"). Thus, even *McLaughlin* implicitly allows non-consumer fraud suits – such as the matter at bar – to proceed as a class action. In any case, notwithstanding the arguments made by Pfizer, nothing in *McLaughlin* supports Judge Brown's orders compelling the production of Plaintiffs' participants' medical records.

     **4.**     ***McLaughlin* Damages Issues Differ From Those In Our Case.** *McLaughlin* noted that plaintiffs' damages model was based on pure speculation. *Id.* at *9. In seeking to quantify the damages suffered by class, the *McLaughlin* plaintiffs attempted to establish damages by comparing the price of "light" cigarettes to "a healthy cigarette" – a conceptual impossibility, according to the court. *See id.* ("We are asked to conceptualize the impossible-a healthy cigarette-and then to imagine what a consumer might have paid for such a thing").

     The damages issue in *McLaughlin* was further complicated by the presence of the Surgeon General's "warning that cigarettes may cause cancer and other diseases" on packages of light, as well as full flavored cigarettes, during the period plaintiffs claimed they were deceived into believing that light cigarettes were healthier than full flavored cigarettes. *See id.* at *8.

     Here, in contrast, damages can be much more readily and directly established and calculated, by computing the difference between the prices TPPs paid for Lipitor and the prices they would have paid absent Pfizer's fraud. No *McLaughlin*-like "conceptual impossibility" interferes with reasonable damages calculations. Here, many market indicia of proper prices for fully-disclosed and fairly advertised Lipitor exist. Abundant market data of other branded statins' prices, and generic statins' prices, is available. Such data can and should properly serve as part of the basis of proper damages expert testimony. Anyway, a *Daubert* hearing is the proper place to address that issue.

     **5.**     **Class Certification Issues not Dispositive of Discovery Issues.** Defendant's submission of *McLaughlin* puts the cart before the horse. *McLaughlin* decided only whether a class could be certified and whether plaintiffs met their burden to establish each element of Rule 23. *Id.* Here, neither Pfizer's Motion for Transfer nor Pfizer's Motion to Dismiss have been decided. Plaintiffs have not yet made their motion to certify a class in this case, because doing so would be premature given the pendency of Pfizer's Motion for Transfer and Motion to Dismiss.

     **6.**     ***McLaughlin* Left Alone Compelling Decisions Supporting Aggregate Proof of Liability and Damages.** *McLaughlin* neither disagreed with nor reversed the rulings of several cases involving pharmaceuticals that suggested that statistically-based and econometrically-modeled damages calculation were appropriate. *See, e.g., In re Neurontin Mktg. and Sale Practices Litig.*, No. 04-10981, 2007 WL 2437954, at *20 (D. Mass. Aug. 29, 2007) (approving as a "widely-used statistical tool" a "time-series regression" analysis used by plaintiffs' expert to "calculate the total number of off-label prescriptions that were caused by defendants' off-label marketing activities"); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004) (certifying class of HMO subscribers in RICO action where damage calculations can be computed "according to some formula, statistical analysis, or other easy or essentially

The Honorable John W. Darrah
Page 5

mechanical methods"); *In re Synthroid Mktg. Litig.*, 188 F.R.D. 295, 300 (N.D. Ill. 1999) (alleging suppression of information on the efficacy of generic substitutes artificially increased demand and price: "The question of liability, therefore, will turn on whether the defendants engaged in the alleged conduct, consisting primarily of the uniform suppression of material information, not on the individual decisions and circumstances of countless people along the chain of distribution of Synthroid."); *In re Zyprexa Prods. Liab. Litig.*, 493 F. Supp. 2d 571, 578-79 (E.D.N.Y. 2007) ("[d]efendant argues that plaintiffs' use of aggregate proof, rather than individualized proof, to establish reliance is impermissible. This assertion is without merit. Statistical proof of reliance is appropriate in the RICO context where a 'sophisticated, broad-based [scheme], by [its] very nature . . . likely to be designed to distort the entire body of public knowledge rather than to individually mislead millions of people[,]' is alleged.") (citations omitted). In fact, *McLaughlin* discussed *Klay* and distinguished it on the basis that *Klay* involved a financial transaction and therefore "[did not] implicate the same type or degree of personal idiosyncratic choice as does a consumer purchase." *McLaughlin*, 2008 WL 878627, at *5 n.7.

Respectfully,

Stephen G. Grygiel

cc:    Mark S. Cheffo, Esquire (via email, telefacsimile and 1st class mail)
       Andrew Jarzyna, Esquire (via email only)
       Thomas K. Prindable, Esquire (via email only)
       George S. Bellas, Esquire (via email only)
       Brian T. Nash, Esquire (via email only)

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen G. Grygiel, certify that on this 16th day of July, 2008, a true and correct copy of Plaintiffs' Response to Defendant Pfizer Inc.'s Motion for Reconsideration of the Minute Order of May 22, 2008 was filed and served electronically through the Court's CM/ECF filing system, and served via electronic mail upon the following counsel of record:

Mark S. Cheffo, Esquire
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036


Andrew J. Jarzyna, Esquire
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
333 W. Wacker Drive
Chicago, IL  60606


<u>s/  Stephen G. Grygiel</u>
  Stephen G. Grygiel