UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

SOUTHERN ILLINOIS LABORERS' AND
EMPLOYERS HEALTH AND WELFARE FUND, <u>et al.</u>,

                  Plaintiffs,

     -against-                    08 CV 5175 (KMW)
                                   <u>OPINION and ORDER</u>

PFIZER INC.,

                  Defendant.

-----------------------------------X

KIMBA M. WOOD, U.S.D.J.:

    Plaintiffs are a putative nationwide class of health care and welfare funds, and third-party payors, who paid a portion of the purchase price of Lipitor, Defendant Pfizer's cholesterol-lowering drug.[1]  Plaintiffs allege in the Second Amended Complaint (hereinafter, the "Complaint") that Defendant fraudulently marketed Lipitor to physicians by concealing the

---

[1] The named Plaintiffs are: (1) Southern Illinois Laborers' and Employers Health and Welfare Fund; (2) NECA-IBEW Welfare Trust Fund; (3) Midwestern Teamsters Health and Welfare Fund; (4) The Welfare Fund of Teamsters Local Union 863; (5) Plumbers and Pipefitters Local Union 630 Welfare Trust Fund; (6) Cleveland Bakers and Teamsters Health and Welfare Fund; (7) Electrical Workers Benefit Trust Fund; (8) Fire & Police Retiree Health Care Fund, San Antonio; (9) Laborers' District Council Building and Construction Health and Welfare Fund; (10) Laborers' District Council Heavy and Highway Utility Health and Welfare Fund; and (11) New York City Police Sergeants and Benevolent Association Health and Welfare Funds.

side effects of Lipitor and by misrepresenting the efficacy of Lipitor in certain patient groups. Plaintiffs argue that this fraudulent conduct caused Plaintiffs to pay more than they otherwise would have paid to treat their plan members for elevated cholesterol levels.

Plaintiffs bring the following claims against Defendant: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1861, et seq.; (2) unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and civil conspiracy under various states' common laws; and (3) violations of several state consumer protection acts.[2]

Defendant moves to dismiss all of Plaintiffs' claims on the ground that Plaintiffs lack standing. For the following reasons, the Court agrees with Defendant that the Complaint, as currently pled, fails to establish standing.

Accordingly, the Court GRANTS Defendant's motion to dismiss in its entirety. The Court sua sponte GRANTS Plaintiffs leave to amend most, but not all, of their claims.[3]

---

[2] Plaintiffs bring claims under Illinois, New Jersey, Florida, Ohio, Indiana, Texas, Pennsylvania, and New York consumer protection acts. Defendant seeks to dismiss for statute-specific reasons all but the Florida claim.

[3] Plaintiffs have not moved for leave to amend the Complaint. However, the Court has the discretion to grant leave to amend sua sponte. Steger v. Delta Airlines, Inc., 382 F. Supp. 2d 382, 387 (E.D.N.Y. 2005) ("[E]ven if not requested by

I.  **Background**

   **A. Facts**

Defendant Pfizer sells Lipitor, a statin drug that lowers patients' cholesterol levels by blocking their bodies' production of certain enzymes needed to produce cholesterol. (Compl. ¶¶ 19, 24.)  In 1996, the FDA approved Lipitor for use in accordance with the third revision of the Adult Treatment Panel guidelines (hereinafter, "ATP III Guidelines"). (Compl. ¶ 38.)

   1.  ATP III Guidelines

The ATP III Guidelines, devised by an expert panel on cholesterol management, advise physicians on how to formulate patient treatment plans that help to prevent the onset of coronary heart disease in certain patients and to manage already existing coronary heart disease in other patients. (Compl. ¶¶ 41-42.)  The ATP III Guidelines set target (or "goal") low-density lipoprotein ("LDL") levels for each patient demographic.

The ATP III Guidelines recommend that drug therapy be prescribed only after a physician considers the following four factors: (1) a patient's LDL level; (2) whether a patient is already suffering from chronic heart disease; (3) the number of

---

the Plaintiff, the Court may sua sponte grant leave to amend."); Witkowich v. Gonzales, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008)(same).

risk factors a patient faces for developing chronic heart disease;[4] and (4) a patient's ten-year probability for developing chronic heart disease.  (Compl. ¶ 45.)

Based on these factors, the ATP III Guidelines recommend that some patients be treated with therapeutic lifestyle changes alone (e.g., changes in exercise, diet, and stress management) and that some patients be treated with drug therapy in conjunction with therapeutic lifestyle changes.  (Compl. ¶ 46.)

      2.   <u>Fraudulently Minimizing Health Risks</u>

Plaintiffs allege that Defendant intentionally: (1) failed to disclose some of Lipitor's side effects to physicians; and (2) minimized the remaining side effects when advertising to physicians.  (Compl. ¶¶ 84-89, 98.)  According to Plaintiffs, Defendant's conduct was part of a plan to encourage physicians to prescribe Lipitor instead of other lower-priced statins, and to prescribe Lipitor to patients who might not otherwise have been prescribed drug therapy.  (Compl. ¶ 81.)

      3.   <u>Fraudulently Expanding Market for Lipitor</u>

Plaintiffs allege that Defendant promoted the use of Lipitor for certain patient groups even though Defendant knew Lipitor

---

[4] Cigarette smoking, hypertension, age, gender, and a family history of heart disease are examples of risk factors for developing chronic heart disease.

would not be effective in those patient groups. (Compl. ¶¶ 100-103.)

Plaintiffs also allege that Defendant fraudulently expanded the market for Lipitor by engaging in off-label marketing[5] and then obscuring the fact that its recommendations were for off-label use.  (Compl. ¶ 144.)  For example, Defendant's sales representatives allegedly misled physicians and pharmacy benefit decision makers[6] ("PBDMs") by stating that the ATP III Guidelines indicate that drug therapy should be used in all patients with LDL levels above their respective LDL goals.  However, the ATP III Guidelines indicate that drug therapy should be used only under certain circumstances when patients' LDL levels are above their respective LDL goals.  (Compl. ¶¶ 138-144.)

---

[5] A physician may prescribe a drug or medical device for uses that are not expressly approved by the FDA. See 21 U.S.C.S. § 396 (2009).  When a patient has been prescribed and has used a FDA-approved drug or medical device for a purpose for which the FDA has not expressly approved, this is called "off-label use." The Supreme Court and the FDA have recognized and approved of the off-label use of drugs and medical devices.  Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 350 (2001) (explaining that "'off-label' usage of medical devices . . . is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine.").

[6] Plaintiffs state that PBDMs are "persons who help third-party payors [such as Plaintiffs] design their pharmacy benefit plans." (Complaint ¶ 118.)  PBDMs help third-party payors "mak[e] choices about which drugs to cover and how much third-party payors will reimburse for certain drugs." (Id.)

4. Lipitor's Price

According to Plaintiffs, the cost per-patient per-month for Lipitor was much higher than the cost would have been if the physician had prescribed a generic statin or recommended therapeutic lifestyle changes alone.[7]  (Compl. ¶ 96.)  Plaintiffs state that they would not have paid this premium for Lipitor if they had know that Defendant was engaging in unlawful marketing.

Plaintiffs contend they were unaware of Defendant's unlawful marketing because they relied on Defendant's statement on its website that it was lawfully advertising Lipitor.  (Compl. ¶ 125.)

**B. Procedural History**

On April 3, 2006, Plaintiffs filed a complaint in the Northern District of Illinois, alleging claims substantially similar to the claims alleged herein.  On February 2, 2007, Defendant moved to transfer the claims of the non-Illinois Plaintiffs to their home states, or in the alternative, to move all the claims to the Southern District of New York, the

---

[7] Plaintiffs cite a Consumer Reports analysis that found, as of February 2007, that a prescription for 10 milligrams per day of Lipitor had an average monthly cost of $93, whereas generic statins for a comparable dose ranged in price from $32 to $83. (Compl. ¶ 96.)

jurisdiction in which the Defendant is headquartered.[8]

On September 4, 2007, while the motion to transfer was pending, Plaintiffs filed the Second Amended Complaint, the complaint at issue here.  On October 4, 2007, Defendant filed a timely motion to dismiss all of Plaintiffs' claims.

On May 29, 2008, Defendant's motion to transfer the case was granted.  Shortly thereafter, the case was transferred to the Southern District of New York.[9]  When the case was transferred to this Court, the October 4, 2007 motion to dismiss had yet to be resolved.

Accordingly, this Court now turns to Defendant's motion to dismiss for lack of standing.  For the following reasons, the Court GRANTS in its entirely, Defendant's motion to dismiss Plaintiffs' claims.  The Court GRANTS <u>sua</u> <u>sponte</u> leave to amend some, but not all, of Plaintiffs' claims.

## II.  Standing

Defendant moves to dismiss Plaintiffs' claims pursuant to

---

[8] When the case was still in the Northern District of Illinois, Defendant also filed a motion for judgment on the pleadings and a motion to dismiss.  The presiding judge in the Northern District of Illinois found that these motions were mooted by subsequent proceedings.

[9] From June 5, 2008 to February 27, 2009, the case was assigned to the Honorable Sidney H. Stein, Southern District of New York.  On February 27, 2009, the case was transferred to the undersigned.

Federal Rule of Civil Procedure ("Rule") 12(b)(1) on several grounds, including the ground that Plaintiffs have failed to adequately allege that Defendant's conduct <u>caused</u> their alleged injury.  The Court holds that Plaintiffs have not adequately alleged causation, and, thus, they lack standing to bring any of their claims against Defendant.

The Court dismisses with leave to amend the RICO claim as well as most of Plaintiffs' state law claims.  The Court denies Plaintiffs leave to amend six of their claims on the ground that amending these six claims would be futile.  __

### A.   Standard of Review

When a defendant moves to dismiss for lack of standing pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction.  <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 96 Civ. 8386 (KMW), 2009 U.S. Dist. LEXIS 34843, at *11-12 (S.D.N.Y. Mar. 18, 2009)(<u>citing</u> <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000)).  In the context of RICO claims, the Rule 12(b)(1) standard is "substantially identical" to the standard for a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 128 (2d Cir. 2003).

Under Rule 12(b)(6), a court must "accept as true all

factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." <u>Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.</u>, 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).

Courts engage in a two-pronged approach when deciding a motion to dismiss.  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). Then, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>  This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quotations omitted)(<u>citing</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).

**B.  RICO Standing**

Defendant seeks to dismiss Plaintiffs' RICO claim on the ground that Plaintiffs have not adequately alleged that Defendant's purported RICO violations <u>caused</u> their injury.

1.  <u>Legal Standard</u>

Under 18 U.S.C. § 1964 ("RICO Section 1964"), a private claimant may sue a person or entity for engaging in "a pattern of

racketeering activity," when the party being sued maintains an enterprise that is engaged in, or affects, interstate commerce. 18 U.S.C. § 1962(b).

Courts have required RICO claimants to meet the following three standing requirements: there must be (1) a RICO violation by the defendant, as defined by RICO Section 1962; (2) an injury to the plaintiff's business or property; and (3) a causal relationship connecting defendant's RICO violation to plaintiff's injury. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994); First Capital Asset Mgmt. v. Brickelbush, Inc., 150 F. Supp. 2d 624, 631 (S.D.N.Y. 2001).

a. Alleging RICO Violation

A plaintiff must allege with particularity the RICO violation, stating why the conduct in question was fraudulent and how it involved interstate commerce. Fed. R. Civ. P. 9(b) ("In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993) (stating that Rule 9(b)'s particularity requirement applies to allegations of mail and wire fraud in civil RICO claims).[10]

---

[10] Typically, a plaintiff must state the contents of the communications, who was involved, where and when the communications took place, and in what way the communications were fraudulent. Mills, 12 F.3d at 1176; Official Publ'ns, Inc.

        b.  Alleging Injury

    To establish standing under RICO, a plaintiff must also
allege injury to her business or property that resulted from the
defendant's alleged fraud.  18 U.S.C. § 1964.  A plaintiff
alleging damages in out-of-pocket losses must allege these
damages as a quantifiable, "clear and definite" monetary amount.
McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 227 (2d Cir. 2008)
(quoting First Nationwide Bank, 27 F.3d at 768); AMA, 588 F.
Supp. 2d at 441 (finding that the plaintiff's alleged injury of
"hundreds of millions of dollars or more" is "neither clear nor
definitive").  Courts disfavor damage estimates that require
speculation, or that are based upon factors other than the
defendant's misrepresentations.  Anza v. Ideal Steel Supply
Corp., 547 U.S. 451, 459 (2006) (finding that the plaintiff had
failed to allege an injury because "[b]usinesses lose and gain
customers for many reasons, and it would require a complex

_____

v. Kable News Co., Inc., 692 F. Supp. 239, 245 (S.D.N.Y. 1988),
aff'd in part, rev'd in part on other grounds, 884 F.2d 664 (2d
Cir. 1989).  "In cases in which the plaintiff claims that the
mails or wires were simply used in furtherance of a master plan
to defraud, . . . a detailed description of the underlying scheme
and the connection therewith of the mail and/or wire
communications, is sufficient to satisfy Rule 9(b)."  In re
Sumitomo Copper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998).
Particularity as to the mailings themselves is unnecessary.  AMA
v. United Healthcare Corp., 588 F. Supp. 2d 432, 443 (S.D.N.Y.
2008).

assessment to establish what portion of [the plaintiff]'s lost sales were the product of [the defendant]'s decreased prices.").

    c.  <u>Alleging Causal Relationship</u>

The final requirement for establishing standing under RICO is causation.  Under RICO Section 1964(c), a RICO claimant must have been injured "by reason of" the defendant's RICO violation. 18 U.S.C. § 1964(c).  A plaintiff must show that a defendant's RICO violation was <u>both</u>: (1) a "but for" cause of his injury; and (2) the proximate cause of his injury.  <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 128 S. Ct. 2131, 2142-43 (2008); <u>see also</u> <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992); <u>McLaughlin</u>, 522 F.3d at 222 (2d Cir. 2008).

When courts analyze the "but for" cause of an injury, they consider whether the conduct at issue was the factual cause of an injury.  <u>See</u>, <u>e.g.</u>, <u>Holmes</u>, 503 U.S. at 265.  In other words, courts assess whether "but for" the defendant's conduct, the injury would not have occurred.

Unlike "but for" causation, proximate causation is a "flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case.'"  <u>Bridge</u>, 128 S. Ct. at 2142 (quoting <u>Holmes</u>, 503 U.S. at 272 n.10).  Courts "use proximate cause to label generically the judicial tools used to limit a person's responsibility for the consequences of that

person's own acts with a particular emphasis on the 'demand for some direct relation between the injury asserted and the injurious conduct alleged.'" Id. (internal citations omitted)(quoting Holmes, 503 U.S. at 268.); see Anza, 547 U.S. at 461.

Courts assessing whether a party has alleged proximate cause, consider whether the party has alleged "some direct relation between the injury asserted and the injurious conduct alleged." Bridge, 128 S. Ct. at 2142 (quoting Holmes, 503 U.S. at 268); Anza, 547 U.S. at 461.  A direct relationship between the injury and the injurious conduct is often established by a plaintiff's allegations that it relied on the defendant's fraudulent statements, and this reliance caused its injury.

A plaintiff's allegation of reliance is often necessary to establish proximate causation.  In Bridge, the Supreme Court explained that the "complete absence of reliance may prevent the plaintiff from establishing proximate cause."[11]  128 S.Ct. at

---

[11] The Supreme Court left open the possibility that a plaintiff could have standing to bring a RICO claim without alleging reliance.  The Supreme Court used the word "may" before "prevent" to refer to the effect the absence of reliance could have on a party's ability to allege proximate cause.
The Second Circuit has declined to reach the issue of whether a plaintiff can ever allege a RICO violation without alleging reliance. City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 444 n.24 (2d Cir. 2008)("[W]e need not address the question of whether an allegation of proximate cause fails where

2144.  A failure to allege reliance may also hamper a plaintiff's ability to assert "but for" causation.  <u>Id.</u> ("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the [defendant's] misrepresentation.").

To establish reliance, a plaintiff need not allege that the plaintiff itself relied on the defendant's misrepresentations.  <u>Id.</u>  The plaintiff can allege reliance by stating <u>either</u> that the plaintiff itself relied on the misrepresentation <u>or</u> that a third-party relied on the defendant's misrepresentation.[12]  <u>Id.</u>

### 2.  <u>Application</u>

In this Order, the Court's RICO analysis focuses exclusively on Plaintiffs' failure to adequately allege <u>causation</u>.  The Court assumes <u>arguendo</u> that Plaintiffs have adequately alleged a RICO violation when they allege that Defendant fraudulently disseminated inaccurate information about the relative safety and efficacy of Lipitor through the mail, by email, and by phone. The Court also assumes <u>arguendo</u> that Plaintiffs adequately allege an injury when they allege that they suffered an economic loss as a result of paying for Lipitor instead of cheaper, safer, and equally effective courses of treatment.

---

there are absolutely no allegations of reliance.").

[12] The Supreme Court recognized that in reaching this issue it was resolving a conflict among the Courts of Appeals.

Plaintiffs advance three theories of causation, none of which is adequately plead in the Complaint.  The first theory of causation is that Defendant made fraudulent misrepresentations to physicians regarding Lipitor's efficacy and safety, and that physicians' reliance on these misrepresentations caused Plaintiffs' injury.  The second theory of causation is that Defendant made misrepresentations directly to Pharmacy Benefit Decision Makers ("PBDMs") and this caused Plaintiffs' injury. The third theory of causation is that Defendant made a fraudulent misrepresentation directly to Plaintiffs regarding Defendant's marketing scheme, and Plaintiffs' reliance on this misrepresentation caused Plaintiffs' injury.

> a.  Misrepresentations to Physicians

The first theory of causation is that the alleged overpayment for patients' cholesterol treatment was caused by Defendant's fraudulent misrepresentations to physicians regarding the efficacy and safety of Lipitor as compared to alternative cholesterol therapies.  Plaintiffs contend that Defendant made these misrepresentations to physicians in general, and as a result of these misrepresentations, Plaintiffs had to pay for Lipitor rather than cheaper statins or non-drug therapies for treating high cholesterol.

Implicit in Plaintiffs' theory of causation is the claim

that physicians relied upon Defendant's misrepresentations when they decided to prescribe Lipitor instead of other cholesterol-lowering treatments.  However, Plaintiffs do not explicitly allege that physicians in fact relied on Defendant's misrepresentations.

Plaintiffs do not cite a single instance in which a physician received the fraudulent information and decided to prescribe Lipitor based on the information she received. Plaintiffs do not even explicitly allege the more general claim that physicians in general relied on Defendant's misrepresentations.  Accordingly, this causation argument fails as currently pled.[13]

b.   Misrepresentations to Physicians

Plaintiffs contend that Pfizer made misrepresentations to

_____

[13] Plaintiffs argue that they do not have to allege reliance to establish causation because Bridge does not state that reliance is always necessary to establish causation.  Plaintiffs further contend that they can establish causation by stating that (1) Plaintiffs' injury was a "foreseeable and natural consequence of" Defendant's scheme,(2) no "independent factors" account for Plaintiffs' injury, and (3) there is "no risk of duplicative recoveries by plantiffs removed at different levels of injury from the violation." Bridge, 128 S.Ct. at 2144.
The Court finds that Plaintiffs have not adequately alleged causation even if the Court assumes arguendo that under certain circumstances an allegation of reliance is unnecessary. Plaintiffs in their briefing state that "no independent factors account for Plaintiffs' injury," but their Complaint does not contain allegations that support this legal conclusion.

16

the PBDMs that were similar to the misrepresentations made to physicians.  Then, PBDMs allegedly included Lipitor on their recommended formularies.[14]

Based on the allegations as currently plead, the Court finds that this does not constitute a viable theory of causation. Plaintiffs do not allege that the PBDMs in fact relied on Plaintiffs' misrepresentations regarding the cost effectiveness, efficacy, or safety of Lipitor when the PBDMs decided to include Lipitor on the recommended formularies.  In addition,  Plaintiffs do not specifically allege that Plaintiffs used formularies that were developed by PBDMs.  Therefore, the Court finds that Plaintiffs fail to adequately establish that the alleged misrepresenations to PBDMs were the cause of Plaintiffs' overpayment for Lipitor.

c.  <u>Misrepresentations to Plaintiffs</u>

Plaintiffs' third theory of causation is that Plaintiffs were injured when they relied on Defendant's misrepresentation on its website.  Defendant's website allegedly stated that its marketing of Lipitor to physicians was lawful, when it was not. Plaintiffs allege that they would have restricted their coverage of Lipitor if Defendant had <u>not</u> stated on its website that it was

---

[14] A formulary is a list of drugs that are covered by a given drug benefit plan.

17

lawfully marketing Lipitor.  Thus, according to Plaintiffs,
Defendant's misrepresentations about the nature of its
advertising campaign caused Plaintiffs' economic loss.

The Court rejects this theory of causation as currently
pled.  Plaintiffs do not allege that Defendant provided
Plaintiffs with misleading substantive information about Lipitor;
thus, Plaintiffs' assessment of Lipitor's value, efficacy, and
safety could not have been affected by Defendant's alleged
misrepresentations.

The Court recognizes that had Plaintiff known the truth
about Defendant's allegedly fraudulent advertising campaign,
Plaintiffs may have been able to provide information to
physicians that countered the information provided by Defendant.
However, this lost opportunity to counter Defendant's
misinformation is immaterial unless Plaintiffs allege that the
physicians were in fact relying on Defendant's
misrepresentations.  Because Plaintiffs do not allege that
physicians relied on Defendant's misrepresentations, Plaintiffs'
reliance on Defendant's claim that it was lawfully advertising
Lipitor, is legally irrelevant.

For these reasons, Plaintiffs' efforts to equate their
claims to those in <u>Desiano v. Warner-Lambert Co.</u>, 326 F.3d 339,
349 (2d Cir. 2003), is misplaced.  In <u>Desiano</u>, the plaintiffs,

who were health insurers, alleged that the defendant,
pharmaceutical company Warner-Lambert and its affiliates, made
misrepresentations about anti-diabetes drug Rezulin's <u>safety</u>
directly to the plaintiffs.  The plaintiffs in <u>Desiano</u> alleged
that they "would have taken steps so as not to purchase Rezulin
at the prices set by Warner-Lambert" had they known that Warner-
Lambert was misrepresenting Rezulin's safety.[15]  326 F.3d at 349.
The Second Circuit in <u>Desiano</u> found that misrepresentation
regarding Rezulin's safety "directly <u>caused</u> economic loss to [the
plaintiffs] as purchasers, since they would not have bought
Defendants' product, rather than available cheaper alternatives,
had they not been misled by [Warner-Lambert's]
misrepresentations."  <u>Id.</u> at 349. (emphasis added).

     Here, the alleged misrepresentation to Plaintiffs is of a
materially different kind than the misrepresentations in <u>Desiano</u>.
Here, Plaintiffs do not allege that Defendant misrepresented
Lipitor's safety directly to Plaintiffs, but rather that
Defendant made a single, very general misrepresentation on its
website; Defendant allegedly stated that its advertising campaign
was lawful, when it was not.  Moreover, as the Court noted above,

---

     [15] The Second Circuit stated that "[a]mong the steps
Plaintiffs might have taken were to exclude it altogether from
their approved schedules, set a low scheduled value, set a high
copay obligation, and otherwise dissuade doctors from prescribing
it." <u>Desiano</u>, 326 F.3d at 349 n.9.

this misrepresentation would be material only if Plaintiffs allege that physicians had relied on Defendant's misrepresentations.

The Court, therefore, GRANTS Defendant's motion to dismiss the RICO claim for lack of standing.  The Court dismisses this claim without prejudice, and _sua sponte_ GRANTS Plaintiffs leave to amend the RICO claim.

**C.  State Law Claims**

Plaintiffs bring claims pursuant to their respective state consumer fraud acts.  The Court dismisses all of these claims on the ground that Plaintiffs have failed to establish standing under Article III of the Constitution.

The Court dismisses most of the state law claims without prejudice.  The Court _sua sponte_ GRANTS Plaintiffs leave to amend most of their claims.  However, for the reasons set forth below, the Court dismisses six of the claims with prejudice and without leave to amend.

1. _Article III Standing_

The Court finds that Plaintiffs have failed to establish Article III standing for the same reasons the Court finds Plaintiffs have failed to establish standing under RICO — Plaintiffs have not alleged a causal connection between the

alleged injury and the challenged act.[16]

          a.   <u>Legal Standard</u>

      Under Article III, judicial power extends only to "cases and controversies."  <u>See</u> U.S. Const. art. III, § 2.  Therefore, a plaintiff must allege that its claim is a case or controversy in order to establish Article III standing.  A plaintiff can do so by alleging: (1) an injury in fact, (2) a causal connection between the alleged injury and the challenged act, and (3) that the alleged injury is likely to be redressed by a favorable decision.  <u>Nat'l Council of La Raza v. Mukasey</u>, 283 Fed. Appx. 848, 850 (2d Cir. 2008)(<u>citing</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)); <u>see also</u> <u>Dep't of Commerce v. U.S. House of Representatives</u>, 525 U.S. 316, 329 (1999).

         b.   <u>Application</u>

      Plaintiffs fail to allege the necessary causal connection between their alleged overpayment for Lipitor and Defendant's alleged misrepresentations.  As the Court discussed above, Plaintiffs assert a theory of causation that is dependant upon the allegation that physicians relied upon Defendant's misrepresentations.  Because the Plaintiffs do not expressly

---

     [16] Here, like in the RICO analysis, the Court assumes <u>arguendo</u> that Plaintiffs have adequately alleged injury and the challenged act is likely to be redressed by a favorable decision.

allege that physicians relied upon Defendant's
misrepresentations, the Court finds that Plaintiffs have not
alleged the necessary causal connection, and thus have not
established Article III standing.  Accordingly, Defendant's
motion to dismiss Plaintiffs' state law claims is GRANTED.

        2.  Amending Claims

     The Court now addresses <u>sua</u> <u>sponte</u> whether to grant
Plaintiffs leave to amend their claims.  Leave to amend should be
given freely.  Fed. R. Civ. P. 15(a)("The court should freely
give leave when justice so requires."); <u>Smokes-Spirits</u>, 541 F.3d
at 452 (<u>quoting</u> Fed. R. Civ. P. 15(a)).  Accordingly the Court
grants Plaintiffs leave to amend the following claims for: (1)
unjust enrichment; (2) fraudulent misrepresentation; (3)
negligent misrepresentation (except for the negligent
misrepresentation claims under Illinois common law, Ohio common
law, and Indiana common law); (4) civil conspiracy; (5) violation
of Pennsylvania's Unfair Trade Practices and Consumer Protection
Law; (6) violation of Indiana's Deceptive Consumer Sales Act; (7)
violation of New York General Business Law; and (8) violation of
Florida's Deceptive and Unfair Trade Practices Act.

     Leave to amend should not been given when amending the
claims would be futile.  <u>Smokes-Spirits.com</u>, 541 F.3d at 452
("Leave to amend need not be granted, however, where the proposed

22

amendment would be futile.") (internal citations and quotations omitted).  For the reasons set forth below, the Court finds that it would be futile to allow Plaintiffs to amend the following claims for: (1) violation of the Ohio Consumer Sales Protection Act; (2) violation of Texas's Deceptive Trade Practices and Consumer Protection Act; (3) violation of the New Jersey Consumer Fraud Act; (4) negligent misrepresentation under Illinois common law; (5) negligent misrepresentation under Ohio common law; and (6) negligent misrepresentation under Indiana common law.  The Court, therefore, dismisses these claims with prejudice and without leave to amend.

> a.   <u>Ohio Consumer Sales Protection Act</u>

Ohio Plaintiff Cleveland Bakers and Teamsters Health and Welfare Fund (hereinafter, "Ohio Plaintiff") brings a claim pursuant to the Ohio Consumer Sales Protection Act, Ohio Rev. Code Ann. § 1354.01(A) (hereinafter, "Ohio Act").  Defendant contends that Ohio Plaintiff cannot establish standing because only natural persons can engage in a consumer transaction under the Ohio Act.  The Court agrees, and thus finds that Ohio Plaintiff is unable to bring a claim under the Ohio Act.

The Ohio Act provides that a "consumer" may recover economic damages for unconsciousable or deceptive acts made in connection with a "consumer transaction."  Ohio Rev. Cod. Ann. § 1345.09.

Under the Ohio Act, a "consumer transaction" must be a "a sale . . . to an individual [defined as a natural person] for purposes that are primarily personal, family, or household."  Ohio Rev. Cod. Ann. § 1345.01(A).

Because a sale must be to a natural person in order to constitute a "consumer transaction" within the meaning of the Ohio Act, the sales from Defendant to Ohio Plaintiffs cannot be characterized as a "consumer transaction."  See City of Findlay v. Hotels.com, L.P., 441 F. Supp. 2d 855, 862 (N.D. Ohio 2006)("Because the City is not a natural person, it may not assert an [Ohio Act] claim.").[17]

Ohio Plaintiff is not a natural person, and thus is unable to engage in a "consumer transaction" within the meaning of the Ohio Act.

Accordingly, the Court finds that allowing Ohio Plaintiff to

---

[17] In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig. explains that plaintiffs who are third-party payors do not have standing under the Ohio Act for the following reason:
> [E]ven if the sale of [medication] from defendants to the patients is characterized as, at least in part, a sale to the plaintiff because the plaintiff paid for the medicine, that sale does not qualify as a "consumer transaction" because transactions between suppliers and corporations, that is, non-natural persons, do not constitute sales to individuals and therefore do not qualify as "consumer transactions" for purposes of standing to bring a claim.

495 F. Supp. 2d 1027, 1032 (N.D. Cal. 2007).

replead its claim would be futile.  Defendant's motion to dismiss Ohio Plaintiff's claim is GRANTED with prejudice and without leave to amend.

> b.   <u>Texas's Deceptive Trade Practices and Consumer Protection Act</u>

Texas Plaintiff F&P Retiree Health Care Fund (hereinafter, "Texas Claim") sues Defendant pursuant to Texas's Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41-63 (hereinafter, the "Texas Act").  Defendant argues that Texas Plaintiff cannot establish standing because Texas Plaintiff did not use Lipitor itself.  The Court agrees that the Texas Plaintiff is unable to establish standing.

The Texas Act grants standing to a "consumer" who "seeks or acquires by purchase or lease, any goods or services."  Tex. Bus. & Com. Code Ann. § 17.45(4).  Texas courts have expressly stated that to state a cause of action under the Texas Act, as Texas Plaintiff seeks to do, the "goods and services, . . . must be purchased or leased for use by the party seeking to state a cause of action."  <u>Crown Life Ins. Co. v. Casteel</u>, 22 S.W.3d 378, 386 (Tex. 2000)(internal quotations omitted); <u>In re Bextra & Celebrex Mktg. Sales Practices</u>, 495 F. Supp. 2d at 1036.

The Court finds that Texas Plaintiff is not a consumer within the meaning of the Texas Act because it does not "use"

Lipitor.  Defendant's motion to dismiss Texas Plaintiff's claim
is GRANTED with prejudice and without leave to amend.

     c.  <u>New Jersey Consumer Fraud Act</u>

  Plaintiff Welfare Fund of Teamsters Local Union 863
(hereinafter, "New Jersey Plaintiff") alleges that Defendant
violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§
56:8-1 <u>et seq.</u> (hereinafter, the "New Jersey Act").  Defendant
argues that New Jersey Plaintiff cannot establish standing
because New Jersey Plaintiff is not a "consumer" within the
definition of the New Jersey Act.  The Court agrees.

  New Jersey state courts have defined a "consumer" as "one
who uses (economic) goods, and so diminishes or destroys their
utilities."  <u>In re Rezulin Prods. Liab. Litig.</u>, 390 F. Supp. 2d
319, 339 (S.D.N.Y. 2005)(<u>quoting</u> <u>City Check Cashing, Inc. v.
National State Bank</u>, 244 N.J. Super. 304, 309 (App. Div. 1990));
<u>see also</u> <u>Lithuanian Commerce Corp. v. Sara Lee Hosiery</u>, 179
F.R.D. 450, 469 (D.N.J. 1998)(explaining that New Jersey courts
have held that a company that purchases a product for resale is
not a consumer because it has not diminished or destroyed the
product through use); <u>Windsor Card Shops v. Hallmark Cards</u>, 957
F. Supp. 562, 567 n.6 (D.N.J. 1997) (same).  As Plaintiffs note,
one New Jersey court has adopted a more expansive definition of
"consumer."  <u>Int'l Union of Operating Eng'rs Local No. 68 Welfare</u>

Fund v. Merck & Co., No. ATL-L-3015-04, 2004 WL 3767338, at *4-6
(N.J. Super. Ct. Law. Div. July 8, 2004)(finding that third-party
payors are "consumers" for the purposes of bringing a illicit
marketing practices claim against a drug manufacturer under the
New Jersey Act).[18]

The Court, however, finds that the weight of New Jersey
authority supports a finding that New Jersey Plaintiff is not a
consumer within the meaning of the New Jersey Act because it does
not use Lipitor in a way that diminishes or destroys its utility.
Accordingly, Defendant's motion to dismiss New Jersey Plaintiff's
claim is GRANTED with prejudice and without leave to amend.

d.  Illinois Negligent Misrepresentation

Illinois Plaintiffs Southern Illinois L&E, NECA-IBEW, and
Midwestern Teamsters H&W (hereinafter "Illinois Plaintiffs") sue

---

[18] The New Jersey Supreme Court, in reviewing this decision
and reversing on other grounds, assumed arguendo that a third-
party payor has standing under the New Jersey Act.   Int'l Union
of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192
N.J. 372, 377 n.1 (2004) ("We presume, for purposes of this
analysis, that [the third-party payor] qualifies as a consumer as
that term is intended in our consumer fraud statute."). Because
the New Jersey Supreme Court has not reached the issue of whether
a third-party payor is a consumer under the New Jersey Act, the
Court relies upon the decisions by the New Jersey state appellate
courts that have addressed this point of law.  As noted above,
these New Jersey appellate courts have largely found that a
"consumer" must personally use the good, and thus third-party
payors cannot be "consumers" within the meaning of the New Jersey
Act.

for negligent misrepresentation under Illinois common law. Defendant argues that Illinois Plaintiffs' claim fails as a matter of law because the Illinois common law provides that a party cannot recover for negligent misrepresentation if it alleges only an economic loss. <u>Nepomoceno v. Knights of Columbus</u>, No. 96 C 4789, 1999 WL 66570 at * 11 (N.D. Ill. February 8, 1999) ("In a nutshell, [the economic loss] doctrine bars a plaintiff from recovering in negligence for losses which are purely economic, that is, do not involve personal injury or property damage . . . . [T]ort law is not intended to compensate parties for monetary loses suffered as a result of duties which are owed to them simply as a result of a contract.").

Illinois common law recognizes an exception to the economic loss doctrine where the defendant is in the business of providing information.  <u>See</u> <u>Tolan and Son, Inc. v. KLLM Architects, Inc.</u>, 719 N.E.2d 288, 294 (Ill. App. Dist. 1999)(explaining that "negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in business transactions is an exception to the [economic loss] doctrine"). Businesses that provide legal or accounting services are examples of businesses that are in the business of providing information. <u>Id.</u>

The economic loss exception also applies when the defendant

provides both tangible goods and informational services, as long as these two aspects of the business are entirely distinct. <u>Id.</u> at 299. When courts consider whether two aspects of a business are entirely district, they consider whether the business's informational service is intertwined with the business's provision of a tangible good. If the two aspects of a business are intertwined, then the economic loss exception does not apply. <u>Id.</u>; <u>Orix Credit Alliance v. Taylor Mach. Works</u>, 125 F.3d 468, 476 (7th Cir. 1997) (finding that because the defendant's appraisals of customers' machinery was intertwined with the tangible goods the defendant sold, the defendant could not be characterized as selling information); <u>see also</u> <u>Coleman Cable Sys. v. Shell Oil Co.</u>, 847 F. Supp. 93, 95 (N.D. Ill. 1994)(stating that the exception to the economic loss doctrine is inapplicable because "any information supplied by the manufacturer was considered merely incidental to the sale of goods" when the manufacturer was in the business of selling computers and roofing materials).

Illinois Plaintiffs argue that they can state a claim for negligent misrepresentation even though they suffered only an economic loss because Defendant was in the business of supplying information: "Pfizer-supplied information about Lipitor was crucial in driving the demand for and setting the price of

29

Lipitor, as well as for the [Plaintiffs'] reimbursement decision." The Court rejects this argument. The information Defendant provided was fundamentally intertwined with its sale of Lipitor, a tangible product. Therefore, the exception to the economic loss doctrine does not apply.

Accordingly, the Court finds that Illinois Plaintiffs are unable to establish a claim for negligent misrepresentation under Illinois common law because they only allege an economic loss and the exception to the economic loss rule does not apply.[19] The Court GRANTS Defendant's motion to dismiss Illinois Plaintiff's negligent misrepresentation claim with prejudice and without leave to amend.

e. Ohio Negligent Misrepresentation

Ohio Plaintiffs bring a negligent misrepresentation claim against Defendant under Ohio common law. Defendant argues that Ohio Plaintiffs' claim necessarily fails because Defendant is not in the business of providing information. The Court agrees.

Under Ohio common law, "[t]he elements for negligent

---

[19] Illinois Plaintiffs also argue that the economic loss doctrine is inapplicable here because they are not alleging a product defect. However, Illinois law does not require a product defect to find the economic loss doctrine applicable, and therefore the Court rejects this argument. See County of Kane v. Shell Pipeline Co., LP, No. 04 cv 8014, 2005 WL 1026583, at *3 (N.D. Ill. Apr. 6, 2005) ("[C]ourts have not strictly limited the economic loss doctrine to products liability claims.").

misrepresentation clearly require (1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant." Nichols v. Ryder Truck Rental, No. 65376, 1994 Ohio App. LEXIS 2697, *11 (Ohio Ct. App. June 23, 1994); see also Thornton v. State Farm Mut. Auto Ins. Co., No. 06 cv 00018, U.S. Dist. LEXIS 83968, at *50 (N.D. Ohio Nov. 17, 2006)(applying Nichols).

Defendant is in the business of providing a tangible product and not information. Accordingly, Ohio Plaintiffs fail to adequately plead a negligent misrepresentation claim under Ohio common law. Thus, the Court GRANTS Defendant's motion to dismiss Ohio Plaintiffs' negligent misrepresentation claim with prejudice and without leave to amend.

### f. Indiana Negligent Misrepresentation

Indiana Plaintiff Electrical Workers Benefit Trust Fund (hereinafter, "Indiana Plaintiff") bring a negligent misrepresentation claim. Defendant argues that the claim should be dismissed on the ground that the parties are not in an employer-employee relationship. The Court agrees.

Indiana common law recognizes claims for negligent misrepresentation only in the context of a relationship between an employer and an employee. Trytko v. Hubbell, Inc., 28 F.3d

715 (7th Cir. 1994); <u>Greg Allen Constr. Co. v. Estelle</u>, 798

N.E.2d 171 (Ind. 2003).  Indiana Plaintiff was not in an

employer-employee relationship with the Defendant.  Accordingly,

the Court GRANTS Defendant's motion to dismiss Indiana

Plaintiff's claim with prejudice and without leave to amend.

## III.  Conclusion

    The Court GRANTS Defendant's motion to dismiss in its entirety on

the ground that Plaintiffs have failed to establish standing.  The

Court GRANTS Plaintiffs leave to amend all of their claims, except for

their claims under the Ohio, Texas, and New Jersey consumer

protection acts and their claims for negligent misrepresentation

under Illinois, Ohio, and Indiana common law.

    Any amended complaint shall be submitted to the Court by

<u>Monday, November 2, 2009 at 5:00 p.m.</u>

    SO ORDERED.

DATED:    New York, New York
          September 30, 2009

                                  _____
                                  KIMBA M. WOOD
                                  United States District Judge

32